COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


TERRY ROGER SKIPPER, S/K/A
 TERRY ROGER SKIPPER, JR.
                                         OPINION BY
v.          Record No. 0667-95-4    JUDGE ROSEMARIE ANNUNZIATA
                                       NOVEMBER 12, 1996
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF PAGE COUNTY
                    Perry W. Sarver, Judge

          David A. Downes for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Following a jury trial in the Circuit Court of Page County,

appellant, Terry Roger Skipper, Jr., was convicted of forcible

rape and forcible sodomy.  Appellant was sentenced to twenty

years imprisonment on each charge, and the trial court suspended

ten years of the sodomy sentence.  We awarded appellant an appeal

limited to the question "whether the trial court erred by

limiting voir dire of the jurors so as to deny appellant a fair

trial."  Finding no error, we affirm.

                              I.

     Appellant was charged with the forcible rape and forcible

sodomy of a sixteen-year-old female.  On the morning of trial,

appellant's counsel filed a motion requesting that "the rights of

the venire be protected by enlarging the time and questions of

defense counsel during voir dire."

The court agreed with the contention of appellant's counsel that effective _voir_ _dire_ could be accomplished only through counsel's interaction with prospective jurors. _See_ Code § 8.01-358. The court also stated that it would allow appellant's counsel to ask any question "that has a tendency to elicit whether or not a juror can be fair and impartial." However, the court stated that it would not allow counsel to conduct individual _voir_ _dire_ unless a juror's response required it.

The court then requested counsel to submit their proposed _voir_ _dire_ questions for the court to review and rule on out of the presence of the jury. In so doing, the court intended to preclude objections and arguments during the course of _voir_ _dire_. In addition to counsel's _voir_ _dire_, the court stated that it would ask the "traditional questions" from the judge's bench book and would prepare a questionnaire for the jurors so that they could privately address whether they or anyone in their family had been the victim of sexual assault or had been accused of such an offense. The court reiterated its practice of withholding questions of individual jurors until it had received individual responses. Appellant raised no objection to the court's proposed procedure.

Appellant's counsel submitted four questions to the court, the following two of which are at issue on appeal:
       (1) Can anyone imagine why a not-guilty person would not testify?

- 2 -

        (2) Who has children?  For those with
            children, have you ever caught them in a
            lie to excuse what they were not
            permitted to do?

The court ruled that the first question was too general and refused to permit its presentation to the jury.  In lieu of the proffered question, the court stated that it would instruct potential jurors that a defendant was not required to take the stand, and it would ask whether that fact would affect the jurors' ability to sit fairly and impartially.  Appellant's counsel declined the court's offer, stating that he wanted to ask a broad question to determine the jurors' attitudes, beliefs, and biases.  The court ruled that the question as framed was inappropriate.  During <u>voir</u> <u>dire</u>, the court asked the potential jurors whether they could accept and follow the law that the defendant is not required to produce any evidence in the case.

The court stated that it did not understand the purpose of the other question at issue.  In response, appellant's counsel proffered the defense's theory of the case: that the young victim lied to her mother about having been sexually assaulted because she had been engaged in prohibited conduct at the time of the alleged offense.  Appellant's counsel stated that he wanted to ask individual follow-up questions to determine the circumstances surrounding any lies told by the prospective jurors' children, again intending to elicit juror "bias" or "prejudice."  The court refused the proposed question, finding that it was irrelevant to determining the prospective jurors' ability to be fair and

impartial. During voir dire, however, the court allowed appellant's counsel to ask whether any potential jurors had children. The court then asked the jurors with children whether the fact that they had children would affect their ability to sit fairly and impartially.

At the close of voir dire, appellant's counsel reiterated his objection to the scope of voir dire. He argued that the court's refusal to allow him to ask the questions as proffered prevented him from inquiring into the prospective jurors' "attitudes and beliefs" and, as a result, both he and the Commonwealth could make their peremptory strikes only on the basis of impermissible stereotypes in violation of J.E.B. v. Alabama, __ U.S. __, 114 S. Ct. 1419 (1994).[1]

II.

Appellant argues that the trial court's limitation on the scope of voir dire denied him his right to trial by an impartial jury under Article 1, § 8 of the Virginia Constitution[2] and the Sixth Amendment of the United States Constitution[3]. However,

_____

[1] At trial, appellant also objected to the Commonwealth's peremptory strikes on the ground that they were gender-based in violation of J.E.B. The trial court overruled appellant's objection. Appellant limited his appeal to the following question: "Whether the trial court erred by limiting voir dire of the jurors so as to deny appellant a fair trial." Accordingly, we decline to address whether the strikes violated J.E.B.

[2] "[I]n criminal prosecutions a man . . . shall enjoy the right to a . . . trial[] by an impartial jury . . . ." Va. Const. art. I, § 8.

[3] "In all criminal prosecutions, the accused shall enjoy the right to a trial[] by an impartial jury . . . ." U.S. Const.

- 4 -

appellant does not rely on the law developed under these two constitutional provisions to support his argument. Rather, appellant contends that the scope of voir dire is defined and governed in this case by equal protection principles and rules enunciated by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny. Appellant argues specifically that the trial court's limitation on voir dire in the present case compelled the parties to make their peremptory strikes based on impermissible stereotypes and, therefore, violated his right to trial by an impartial jury.

In support of his position that equal protection principles govern this case, appellant cites J.E.B. v. Alabama, __ U.S. __, 114 S. Ct. 1419 (1994), in which the United States Supreme Court held that the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender. Specifically, appellant posits his claim that equal protection principles govern this court's review of claimed error made in conducting voir dire on the following statement of the J.E.B. Court:

> If conducted properly, voir dire can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently.

J.E.B., __ U.S. at __, 114 S. Ct. at 1429.
(..continued)
amend. VI.

The language from J.E.B relied upon by appellant does not support his contention. Rather, J.E.B. simply recognizes the logical and practical consequence of Batson and its progeny; if peremptory strikes must now be explained, it follows that voir dire of the venire will be the primary tool by which parties will gather information about the venire to explain their choices. Moreover, in reviewing J.E.B. in its entirety, we find it does not mandate a constitutionally grounded, expanded scope of voir dire and does not displace, either explicitly or implicitly, constitutional principles governing the scope of voir dire. Indeed, the United States Supreme Court has specifically underscored the distinction which must be made between Fourteenth Amendment and Sixth Amendment principles as they apply to voir dire. See Holland v. Illinois, 493 U.S. 474, 487 (1990).

That voir dire "plays a critical function" in ensuring juror impartiality has long been recognized under Virginia law. See Reynolds v. Commonwealth, 6 Va. App. 157, 164, 367 S.E.2d 176, 180 (1988) (citation omitted). The principles which govern the review of error in the trial court's conduct of voir dire are likewise well-established. See Turner v. Commonwealth, 221 Va. 513, 523, 273 S.E.2d 36, 42 (1980), cert. denied, 451 U.S. 1011 (1981) ("Unless the [court's] refusal to ask a question amounts to a denial of due process or otherwise impinges upon the right to a fair and impartial jury . . . a trial court [may] use its discretion in determining whether to ask questions proposed by

either the Commonwealth or the defendant") (citations omitted). These principles require that a trial court "afford a party a `full and fair' opportunity to ascertain whether prospective jurors `stand indifferent to the cause.'" Buchanan v. Commonwealth, 238 Va. 389, 401, 384 S.E.2d 757, 764 (1989), cert. denied, 493 U.S. 1063 (1990) (quoting LeVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983), cert. denied, 464 U.S. 1063 (1984)).

However, proper limitations on a party's right to examine prospective jurors may be imposed. "`[A] party has no right, statutory or otherwise, to propound any question he wishes, or to extend voir dire questioning ad infinitum.'" Chichester v. Commonwealth, 248 Va. 311, 325, 448 S.E.2d 638, 647 (1994), cert. denied, 115 S. Ct. 1134 (1995) (quoting LeVasseur, 225 Va. at 581, 304 S.E.2d at 653); see also Code § 8.01-358 (counsel has right to ask "any relevant question to ascertain whether [a prospective juror] is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein"). A trial court's decision regarding the scope of voir dire is a matter committed to the exercise of the trial court's discretion, which will be upheld on appeal "[w]here [the trial court] affords ample opportunity to counsel to ask relevant questions and where the questions [it] actually propound[s] . . . [are] sufficient to preserve a defendant's right to trial by a fair and impartial

- 7 -

jury." Buchanan, 238 Va. at 401, 384 S.E.2d at 764. The objecting party bears the burden of demonstrating that the trial court abused its discretion in limiting the scope of voir dire, see Chichester, 248 Va. at 325, 448 S.E.2d at 647, and must show that the jury panel lacked impartiality or that the jury selection process the court employed was prejudicial. See Beavers v. Commonwealth, 245 Va. 268, 277, 427 S.E.2d 411, 418, cert. denied, 510 U.S. 859 (1993). These principles remain unchanged by J.E.B. and our decisions decided under it. See, e.g., Riley v. Commonwealth, 21 Va. App. 330, 464 S.E.2d 508 (1995) (addressing Equal Protection principles, not whether scope of voir dire was proper).

We find that the trial court's ruling with respect to appellant's proposed questions did not deprive appellant of trial by an impartial jury, nor did the selection process prejudice appellant.

> Trial courts are not required to allow counsel to ask questions which are so ambiguous as to render the answers meaningless. To be permissible, counsel's questions must be relevant in that they are such as would necessarily disclose or clearly lead to the disclosure of relationship, interest, opinion, or prejudice.

Buchanan, 238 Va. at 401, 384 S.E.2d at 764 (citations omitted). In Buchanan, the Supreme Court affirmed the trial court's refusal to allow the defendant's counsel to ask the following question: "From what you have read or heard about this case in

the newspapers, what impression do you have about this case?"

Id. The Court explained its reasoning as follows:

> To ask a prospective juror his impression of a case may, through a circuitous route, lead finally to a disclosure of opinion or prejudice. But, as noted above, to be relevant, a question to a prospective juror must necessarily disclose or clearly lead to the disclosure of opinion or prejudice. We do not think the . . . question is of that kind. It is ambiguous and unfocused. It does not, for example, ask whether, based on news coverage, the prospective juror had formed an impression as to the defendant's guilt or innocence, or an impression as to whether defendant should or should not be executed, or an impression as to whether defendant was justified in his actions. Instead, Buchanan's proposed question appears to be an invitation to a rambling discourse on a broad range of emotions. In short, the start of a fishing expedition. However, to launch upon a fishing expedition of a prospective juror's general feelings about a case is not the aim of voir dire. The question was properly rejected.

Id. at 402, 384 S.E.2d at 765.

We adopt this reasoning in affirming the trial court's action in the present case. Asking jurors whether they could "imagine" why an accused would not take the stand is strikingly similar to "an invitation to a rambling discourse on a broad range of emotions." Id. We agree with the trial court that such a question was ambiguous and unfocused and its rejection did not deny appellant his right to an impartial jury.[4]

_____

[4] Furthermore, the trial court inquired of the prospective jurors whether they would be able to abide by the law that appellant was not required to produce evidence in the case. This inquiry was sufficient to ferret out a prospective juror's inability to render a verdict unaffected by appellant's failure

We also find no basis for appellant's contention that he was denied an impartial jury because the trial court refused his request to ask whether any prospective juror having children "ever caught them in a lie to excuse what they were not permitted to do," and under what circumstances. Appellant was permitted to inquire as to which prospective jurors had children. Additionally, the court inquired whether the fact that a juror had children would affect that juror's ability to sit impartially. While the question appellant proffered to the court was related to his theory of the defense, we cannot say his inquiry, framed so broadly, would "necessarily disclose or clearly lead to the disclosure" of partiality, bias, or prejudice.

In short, the record fully supports the trial court's decision to refuse to allow appellant to ask the questions at issue on appeal.[5] Nothing in the record suggests that the trial (..continued)
to present evidence.

[5] In his brief, appellant also complains that the trial court "barred any interaction [between appellant's counsel and the jury] unless the [voir dire] question was in writing, previously approved by the Court, and, most likely, communicated by the trial judge instead of the lawyer." As such, appellant complains that he was precluded from asking other specific questions. Appellant has no grounds to complain. See Rule 5A:18. The trial court asked that the proposed voir dire questions be presented in writing for its review, to preempt objections and arguments in front of the jury during voir dire. Appellant did not object. Furthermore, appellant failed to raise in the trial court the questions he now claims he was precluded from asking. Finally, it is clear from the record that appellant was not prevented from asking any relevant follow-up questions. The court stated that it would allow appellant to ask any question relevant to determining juror bias.

court's limitation on the scope of <u>voir</u> <u>dire</u> denied appellant an impartial jury.

Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>