Present:  All the Justices

KEVIN GREEN

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.  Record No. 002976          June 8, 2001

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
James A. Luke, Judge

I.

Kevin Green appeals his capital murder conviction and sentence of death.  The dispositive question in this appeal is whether the circuit court abused its discretion in refusing to remove two members from the venire.  Because we conclude that the circuit court abused its discretion, and that such abuse constitutes manifest error, we will reverse the judgment of the circuit court confirming Green's capital murder conviction, and we will only address certain issues in this appeal.

II.

The defendant was tried before a jury and found guilty of the capital murder of Patricia L. Vaughan during the commission of robbery in violation of Code § 18.2-31(4).  The jury also found the defendant guilty of robbery, malicious wounding of Lawrence T. Vaughan, and three counts of the illegal use of a firearm.

In the penalty phase of the capital murder trial, the jury fixed the defendant's punishment at death for the capital murder conviction, finding that he represented a continuing serious threat to society and that his conduct in committing the offense was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim.  See Code § 19.2-264.2.  The jury fixed the defendant's punishment for the non-capital offenses as follows:  life imprisonment for the robbery, 20 years imprisonment for the malicious wounding, and three sentences of three years each for the illegal use of a firearm convictions.  After considering a report prepared by a probation officer pursuant to Code § 19.2-264.5, the circuit court sentenced the defendant in accord with the jury's verdict.  Green did not appeal his non-capital convictions. Therefore, those convictions are not before this Court and are not affected by this opinion.  We consolidated the automatic review of the defendant's death sentence with his appeal of the capital murder conviction.  Code § 17.1-313(F).

### III.

#### A.

The defendant argues that the circuit court erred by overruling his motion to strike for cause prospective jurors Charles Overby and Edith Pearson.  The defendant contends that

Overby and Pearson were not impartial and that the circuit court abused its discretion when it refused to remove them from the venire. Responding, the Commonwealth states that the circuit court properly overruled the defendant's motion to strike Overby and Pearson.

B.

Charles Overby

The following colloquy occurred during the voir dire of Charles Overby.

"THE COURT:  Have you expressed or formed any opinion about the guilt or innocence of the accused?

"MR. OVERBY:  No, sir.

"THE COURT:  Do you know of any bias or prejudice whatsoever which would keep you from being able to give a fair trial both to the Commonwealth and to the accused?

"MR. OVERBY:  I only believe in the Bible, an eye for an eye, tooth for a tooth.

"THE COURT:  This case involves the possibility of capital punishment.  Do you have any opinion such as would prevent you from convicting anyone of an offense punishable with death?

"MR. OVERBY:  No, sir.

"THE COURT:  Could you never vote to impose the death penalty?

"MR. OVERBY:  I don't know about that.

"THE COURT:  Would you find it impossible to do that?

3

"MR. OVERBY:  I don't know.  That would be . . . hard.

"THE COURT:  Would you find it impossible to?  Would you not be able to consider it at all?  Would you refuse to even consider it?

"MR. OVERBY:  No.  I would consider it.

"THE COURT:  If you were sitting as a juror in this case and the jury were to convict the defendant of capital murder, you are saying you could consider the death penalty?

"MR. OVERBY:   Yes, sir.

. . . .

"[COMMONWEALTH'S ATTORNEY]:  This is a two part trial.  If you find the defendant guilty beyond a reasonable doubt of capital murder, you will then hear more evidence before deciding between the death penalty or life imprisonment without parole.  After the guilty finding — Would you be willing to listen to further evidence after the guilty finding from the Commonwealth and the defense before finding the appropriate sentence for the defendant?

"MR. OVERBY:  Yes, ma'am.

"[COMMONWEALTH'S ATTORNEY]:  Okay.  In the second phase the Commonwealth may introduce evidence in aggravation of the offense.  The defendant may produce evidence in mitigation of the offense.  After this, would you then impose a sentence on the defendant either to death or to life imprisonment without parole?

"MR. OVERBY:  Yes, ma'am.

"[COMMONWEALTH'S ATTORNEY]:  You understand how the two part procedure would be?

"MR. OVERBY:  Yes, ma'am.

"[COMMONWEALTH'S ATTORNEY]:  All right.  Would you be able to consider both the death penalty as

4

you have answered for the Judge and also life in prison without parole and impose either one based only on the law and the evidence that you receive?

"MR. OVERBY: Yes, ma'am.

. . . .

"[DEFENDANT'S ATTORNEY]: Would you always vote to impose the death penalty in every case where a defendant is found guilty of a capital offense?

"MR. OVERBY: Yes, sir. If it was proven guilty, yes, sir, I would vote for guilty.

"[DEFENDANT'S ATTORNEY]: If the Commonwealth proves it beyond a reasonable doubt that the defendant committed a capital offense, you would vote for the death penalty?

"MR. OVERBY: Yes.

"[DEFENDANT'S ATTORNEY]: You would not give any consideration to a lesser penalty?

"MR. OVERBY: No. He didn't give his victim consideration when he took their life.

. . .

"[COMMONWEALTH'S ATTORNEY]: Mr. Overby, when I asked you my series of questions, I asked you whether you would be able to consider the death penalty in a capital murder case and also whether you would be able to consider life without parole in a capital murder case, and your answers were, yes, you would be able to consider both. Would you be able — If a person was convicted of capital murder, would you be able to consider both the death penalty and life without parole?

"MR. OVERBY: Yes.

"[COMMONWEALTH'S ATTORNEY]: Thank you.

"[DEFENDANT'S ATTORNEY]: That prompts a follow-up. I'm still not sure that —

5

"THE COURT:  May I interrupt a moment?

"[DEFENDANT'S ATTORNEY]:  Yes, sir.

"THE COURT:  I think it's important, and maybe we haven't done it since you are asking it that way, that Mr. Overby be told what the two possibilities are because he gave me the same answer he just gave [the Commonwealth's attorney], and I think he needs to know that.  And if you wish to do that, that's fine.

"[DEFENDANT'S ATTORNEY]:  The two possibilities, Mr. Overby, if [the defendant] is found guilty of a capital offense would be, one, death and, number two, life without parole.  And what we would all like to be sure is that if the Commonwealth proves beyond a reasonable doubt he's guilty of a capital offense, are you going to vote automatically for death or can you give it your consideration to vote for life without parole?

"MR. OVERBY:  I would give consideration to vote for life, but still there again, as I said, I would vote an eye for an eye as the Bible says.

"[DEFENDANT'S ATTORNEY]:  I don't know how to interpret that.  What I'm thinking, you correct me if I'm wrong, that what you are saying is if he is proved guilty beyond a reasonable doubt of a capital offense you are going to vote death?

"MR. OVERBY:  I think it should be.  Right, yes, sir."

After the defendant's counsel made a motion to strike Overby from the venire for cause, the circuit court, denying the motion, responded:

"As I understand Mr. Overby's answers to this particular question is that though he has a personal belief he could consider what the law calls for, and that's the question that has to be answered here.

6

The Court overrules the motion to strike Mr. Overby for cause."

C.

Edith Pearson

The following colloquy occurred during the <u>voir</u> <u>dire</u> of Edith Pearson.

"THE COURT:  Do you have any interest in the trial or the outcome of this case?

"MS. PEARSON:  No, sir.

"THE COURT:  Do you know anything about it? Have you ever read about it, heard about it?

"MS. PEARSON:  Read a little bit in the paper.

"THE COURT:  You read about it in the paper?

"MS. PEARSON:  Yes.

"THE COURT:  Have you formed any opinion or expressed any opinion as to the guilt or innocence of [the defendant]?

"MS. PEARSON:  No.  I suppose he is guilty.

"THE COURT:  Ma'am?

"MS. PEARSON:  I suppose he is guilty.

"THE COURT:  Is that because he is charged with the crime?

"MS. PEARSON:  No.

"THE COURT:  Why do you suppose he is guilty?

"MS. PEARSON:  Well, from just what I read. They say he was there.

"THE COURT:  So you're going by what you read in the newspaper?

"MS. PEARSON:  Yes, sir.

. . . .

"THE COURT:  Do you understand that every defendant is presumed to be innocent throughout the course of the trial?

"MS. PEARSON:  Yes, sir.

"THE COURT:  And that the burden is on the Commonwealth to prove a defendant guilty beyond a reasonable doubt?

"MS. PEARSON:  Yes, sir.

"THE COURT:  And do you understand that the defendant doesn't have to produce any evidence? That's all on the Commonwealth.

"MS. PEARSON:  Yes, sir.

. . ..

"[DEFENDANT'S ATTORNEY]:  Do I understand you to say in answer to the Judge's questions that you suppose the defendant is guilty because of what you read in the papers?

"MS. PEARSON:  Yes.

"[DEFENDANT'S ATTORNEY]:  Does that mean that — Do you feel like the defense is going to have to prove him innocent to you if you sit as a juror?

"MS. PEARSON:  Yes, I suppose I do.

"[DEFENDANT'S ATTORNEY]:  That we will have to prove him innocent?

"MS. PEARSON:  Uh-huh.

[DEFENDANT'S ATTORNEY]:  If we presented no evidence at all, the defense, then am I assuming correctly that you have made up your mind that you would find him guilty of the charge?

8

"MS. PEARSON:  Yes.

"[DEFENDANT'S ATTORNEY]:  You would?

"MS. PEARSON:  Yes.

"[DEFENDANT'S ATTORNEY]:  Judge —

"THE COURT:  I think you are asking only one side of it, and I would ask you to ask her whether — Because the burden is on the Commonwealth to prove him guilty.  You're not asking that.  You're asking the one way.

"[DEFENDANT'S ATTORNEY]:  I will ask the other way.
The Judge has asked you if you realize the burden is on the Commonwealth to prove this accused guilty?

"MS. PEARSON:  Uh-huh.

"[DEFENDANT'S ATTORNEY]:  Do you understand that it's their burden?

"MS. PEARSON:  Yes.

"[DEFENDANT'S ATTORNEY]:  Do you understand that the defense under the law doesn't have to produce any evidence?

"MS. PEARSON:  Yes.

"[DEFENDANT'S ATTORNEY]:  All right. Understanding that, if we don't, is your verdict in this case — Are you telling us right now it's going to be guilty if we don't produce any evidence, the defense?

"MS. PEARSON:  I feel so.

"[DEFENDANT'S ATTORNEY]:  You think so?

"MS. PEARSON:  Yes.

9

"THE COURT: May I ask the question because what's concerning me is that — Suppose the Commonwealth does not prove beyond a reasonable doubt that he's guilty, how would you feel then?

"MS. PEARSON: I suppose I'll find him innocent then.

"THE COURT: Okay. Then you realize the defense doesn't have to say anything?

"MS. PEARSON: Yes, sir.

"THE COURT: All right. So even though walking in here today from what you have read in the paper you have a feeling that he's guilty?

"MS. PEARSON: Yes, sir.

"THE COURT: Could you keep an open mind and wait for it to be proven?

"MS. PEARSON: Yes, sir."

At the conclusion of the voir dire of Pearson, the defendant made a motion to strike her for cause. The circuit court denied the motion and stated:

"Ms. Pearson is not the most verbal person we have interviewed. She says that she has formed an opinion, but it's very shallow. It's not based on facts or any deep seated beliefs when we examined it. The Court feels that she is qualified. I don't think that her answers show that she has any opinion that would be set in stone and would not be changing constantly as she heard the evidence, which is what we want jurors to do, is to listen to all of it. The Court finds Ms. Pearson can do that and will seat her."

D.

The following principles are pertinent to our resolution of the defendant's contention that the circuit court abused

10

its discretion in failing to grant his motions to strike Overby and Pearson.  Initially, we observe that the right of an accused to trial by an impartial jury is a constitutional right.  U.S. Const. Amends. VI and XIV; Va. Const. Art. 1, Sec. 8.  Additionally, Code § 8.01-358 and Rule 3A:14 provide that members of the venire must "stand indifferent in the cause."

We have stated that a prospective juror

> "must be able to give [the accused] a fair and impartial trial.  Upon this point nothing should be left to inference or doubt.  All the tests applied by the courts, all the enquiries made into the state of the juror's mind, are merely to ascertain whether [the juror] comes to the trial free from partiality and prejudice.
>    "If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion.  For, as has been well said, it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible."

Wright v. Commonwealth, 73 Va. (32 Gratt.) 941, 943 (1879); accord Barker v. Commonwealth, 230 Va. 370, 374-75, 337 S.E.2d 729, 732-33 (1985); Justus v. Commonwealth, 220 Va. 971, 976, 266 S.E.2d 87, 90-91 (1980); Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976).

On appellate review, this Court must give deference to the circuit court's determination whether to exclude a prospective juror because that court was able to see and hear

11

each member of the venire respond to questions posed. The circuit court is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath. Lovitt v. Commonwealth, 260 Va. 497, 510, 537 S.E.2d 866, 875 (2000); Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999), cert. denied, 530 U.S. 1218 (2000); Stewart v. Commonwealth, 245 Va. 222, 234, 427 S.E.2d 394, 402, cert. denied, 510 U.S. 848 (1993). We must consider the voir dire as a whole, and not the juror's isolated statements. Clagett v. Commonwealth, 252 Va. 79, 90, 472 S.E.2d 263, 269 (1996), cert. denied, 519 U.S. 1122 (1997). And, the circuit court's refusal to strike a juror for cause will not be disturbed on appeal unless that decision constitutes manifest error. Clagett, 252 Va. at 90, 472 S.E.2d at 269; Roach v. Commonwealth, 251 Va. 324, 343, 468 S.E.2d 98, 109, cert. denied, 519 U.S. 951 (1996); Stockton v. Commonwealth, 241 Va. 192, 200, 402 S.E.2d 196, 200, cert. denied, 502 U.S. 902 (1991).

E.

Applying the aforementioned principles, we hold that the circuit court abused its discretion and that such abuse of discretion constituted a manifest error when the circuit court

12

failed to remove Overby and Pearson from the venire.  And, we hold that the seating of the two jurors requires a reversal of the circuit court's judgment confirming the jury's convictions.

As the above-referenced colloquy indicates, Overby possessed a firm belief in the adage, "an eye for an eye, tooth for a tooth."  He stated that if the Commonwealth proved beyond a reasonable doubt that the defendant had committed a capital offense, he would vote to fix the defendant's penalty at death and that he would not give any consideration to a lesser penalty because the defendant "didn't give his victim consideration when he took [her] life."

Even though Overby, in response to questions raised by the circuit court and the Commonwealth's attorney, indicated that he would consider both the imposition of the death penalty and life without parole if the defendant were convicted of capital murder, Overby exhibited a strong belief that if the defendant committed a capital offense, he should be sentenced to death.  At the conclusion of his voir dire, Overby reasserted that he would vote to sentence the defendant to death if the Commonwealth proved beyond a reasonable doubt that the defendant had committed a capital offense.  We can only conclude from Overby's responses to the voir dire questions that he had formed a fixed opinion about the

13

punishment that the defendant should receive if the defendant were convicted of a capital offense and, thus, Overby was not impartial and "indifferent in the cause."

We also hold that the circuit court abused its discretion in seating Pearson and that such abuse of discretion constituted manifest error. As the above-referenced colloquy indicates, Pearson had formed opinions which clearly indicate that she was not indifferent in the cause. Pearson initially informed the circuit court that she "suppose[d]" that the defendant was guilty. She had formed that opinion because she had read in a newspaper that the defendant was present when the crimes occurred.

Even though Pearson subsequently stated, in response to questions from the circuit court and the Commonwealth's attorney, that she understood the defendant was presumed to be innocent and that the Commonwealth was required to prove him guilty beyond a reasonable doubt, she later made conflicting statements. For example, after Pearson had informed the circuit court that she believed the defendant was presumed to be innocent throughout the course of the trial, Pearson informed the defendant's attorney that the defendant would have to prove his innocence and that if the defendant presented no evidence at all, she would find him guilty of the charges.

14

After the defendant's attorney reminded Pearson that the circuit court had informed her that the Commonwealth has the burden to prove the defendant's guilt, Pearson, nonetheless, stated that she would find the defendant guilty if the defendant failed to produce any evidence. Although Pearson stated in response to the circuit court's inquiry that she "suppose[d]" that she would find the defendant innocent if the Commonwealth failed to prove his guilt beyond a reasonable doubt, her voir dire, when reviewed in its entirety, compels us to conclude that she had formed firm opinions which would have impaired her ability to be impartial and stand indifferent in the cause.

We have stated that "[b]y ancient rule, any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." Breeden, 217 Va. at 298, 227 S.E.2d at 735. In Dejarnette v. Commonwealth, 75 Va. (1 Matt.) 867 (1881), we ruled that the circuit court should have removed a venireman who equivocated when asked if he had formed a fixed opinion about the accused's guilt. And, we emphasized that the juror's assertions that he could give the defendant a fair trial did not purge the taint. Id. at 872. Indeed, we stated in Armistead v. Commonwealth, 38 Va. (11 Leigh) 688, 695 (1841), that "however willing [the juror] may be to trust himself, the law will not trust him."

15

A defendant is entitled to a trial by jurors who stand indifferent in the cause. Even though circuit courts have wide latitude in the seating of jurors, courts must be mindful that if any reasonable doubt exists regarding whether a juror stands indifferent in the cause, that doubt must be resolved in favor of the defendant. A juror's ability to give a defendant a fair and impartial trial must not be left to inference or doubt.

## IV.

We will reverse that part of the judgment of the circuit court that confirmed the capital murder conviction and the sentence of death. We will remand this case to the circuit court for a new trial on the capital murder offense. See Burks v. United States, 437 U.S. 1, 15 (1978). The defendant's non-capital convictions are not before this Court and are not affected by this opinion.

Reversed and remanded.