COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, Malveaux and White
Argued at Norfolk, Virginia


ANTONIO LEE SUTTON

                                                MEMORANDUM OPINION* BY
v.        Record No. 1854-22-1                  JUDGE GLEN A. HUFF
                                                JUNE 4, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Catherine French Zagurskie, Chief Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a five-day trial in the Circuit Court for the City of Chesapeake (the "trial

court"), a jury convicted Antonio Lee Sutton ("appellant") of first-degree murder, aggravated

malicious wounding, abduction, and three counts of use of a firearm in the commission of a

felony - subsequent offense.  The trial court sentenced appellant to life plus fifty years'

imprisonment, with twenty years suspended.  On appeal, appellant seeks reversal of his first-

degree murder conviction based on several alleged errors by the trial court.  He first assigns error

to the trial court's rulings regarding (i) his voir dire questions, (ii) his motion to strike certain

jurors for cause, (iii) the misconduct of a juror during trial, and (iv) the testimony of a defense

witness.  He further argues that the evidence was insufficient as a matter of law to establish the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

requisite intent for a charge of first-degree murder.  For the following reasons, this Court affirms the trial court's judgment.

BACKGROUND[1]

On January 1, 2022, appellant shot and killed his girlfriend.  He also shot his girlfriend's adult daughter in the abdomen, but she survived her injuries.  Along with other related charges, the Commonwealth indicted appellant for first-degree murder.  Although he admitted to killing his girlfriend, appellant raised a defense of voluntary intoxication at trial, claiming he had been too drunk to form the requisite intent for a charge of first-degree murder.

Voir Dire Questioning

Jury selection for appellant's trial began on April 18, 2022.  The Commonwealth objected to two of appellant's proposed voir dire questions: numbers 4 and 9.  Appellant's proposed version of Question 4 read: "[Appellant] is charged with [first-]degree murder among other charges.  You will hear that he had been drinking and was heavily intoxicated.  Is there anyone who has a negative opinion in general about individuals who drink heavily?"  Appellant's proposed version of Question 9 read: "Do you feel that since [appellant] has been charged with this offense that he is, therefore, probably guilty?  You will hear evidence that he also consumed alcohol that night, does that change your opinion?"

The Commonwealth argued that the language about intoxication in those questions was inappropriate because no evidence would be introduced at trial to suggest that appellant had consumed any alcohol on the night of the alleged offense, let alone enough alcohol to render him

---

[1] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."  *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

"intoxicated." In the absence of such evidence, it would be irrelevant to consider whether a prospective juror's impartiality would be affected by appellant's alleged intoxication. Appellant disagreed, pointing to the body-worn-camera ("BWC") footage of the arresting officer, Officer West, and the expected testimony of an unnamed civilian witness whose answers during an interview with the Commonwealth allegedly described appellant's signs of intoxication on the day of the shooting. The Commonwealth asserted it did not plan to call that witness, whose testimony, if presented, would not establish appellant's intoxication.[2]

The trial court suggested changing Question 4 to read as follows: "[Appellant] is charged with [first-]degree murder among other charges. You *may* hear that he had been *consuming alcohol; if that is the case*, *would you have* a negative opinion in general about individuals who *consume alcohol*?"[3] This change would essentially replace the phrase "drink heavily" with "consume alcohol" and remove any mention of "intoxication." Appellant objected to the removal of language that appellant was "intoxicated," insisting that the Commonwealth would have to call at least one witness whose observations on the date of the incident would support appellant's "voluntary intoxication" defense. Appellant also noted that evidence of intoxication could be established by his own testimony if he chose to take the stand.[4] The Commonwealth maintained its objection that appellant's proposed wording would give the impression of a fact— appellant being intoxicated from having consumed alcohol—that would not be proven at trial.

---

[2] As recounted by the Commonwealth, that witness initially attested that appellant had consumed alcohol but later admitted that "he had not seen [appellant] consume any alcohol" on the day of the shooting and had instead misinterpreted appellant's struggle with the decedent over the firearm "to suggest that [appellant] was drunk." The witness further told the Commonwealth that he had seen appellant intoxicated before and that appellant's demeanor and behavior on the day of the shooting did not suggest he was under the influence of alcohol.

[3] For clarity, the trial court's changes to the wording of Questions 4 and 9 are italicized herein.

[4] Appellant did not testify during trial.

Ultimately, the trial court ruled in favor of the Commonwealth, removing reference to appellant's possible "intoxication" from Questions 4 and 9. The revised version of Question 4 read: "[Appellant] is charged with first-degree murder among other charges. You may hear that he had been drinking. Is there anyone who has a negative opinion in general about individuals who use alcohol?" The revised version of Question 9 read: "Do you feel that since [appellant] has been charged with this offense that he is, therefore, probably guilty? You *may* hear evidence that he also consumed alcohol that night, does that change your opinion?"

Appellant's Motion to Strike Prospective Jurors

Following the trial court's revisions to Question 4 and 9, both parties proceeded to question the prospective jurors. The Commonwealth began by asking each juror to state their name, the nature of their employment, and their significant other's occupation. As relevant here, Juror 10 replied, "I'm a mechanic, and my significant other is right there. . . . She's a third-grade teaching assistant." The other juror indicated by Juror 10 was Juror 11. She likewise stated: "I'm a third-grade teaching assistant, and my boyfriend is a mechanic."

Based on those disclosures, the trial court permitted appellant to question Jurors 10 and 11, separately, outside the presence of the rest of the prospective jurors. Appellant first questioned Juror 10 about his relationship with Juror 11. Juror 10 said that he and Juror 11 had been dating for over three years and lived together. When appellant subsequently questioned Juror 11, she stated that she had been in a relationship with Juror 10 for two years and that she had been living with Juror 10 for four months. Appellant did not ask either juror whether their relationship would affect their ability to remain impartial and to exercise independent judgment free of influence by the other.

Appellant then moved to strike either Juror 10 or 11 for cause, arguing that allowing both members of a romantic domestic relationship to serve together as jurors would be "inherent[ly]

- 4 -

problematic, particularly in terms of the feasibility of the jurors being able to go home together each evening and refrain from discussing the case." The trial court denied the motion, noting that neither juror had shown signs of prejudice. After both parties concluded their voir dire of the rest of the prospective jurors, appellant used a peremptory strike to remove Juror 10. Juror 11 was seated as one of the twelve members of the jury.

Trial Court's Response to Juror Misconduct

On the third day of trial, a witness, who had testified the day before, privately informed the Commonwealth that one of the jurors had spoken to her outside the courtroom. The witness said she was sitting outside the courtroom when a juror walked by, greeted her by name, and said that she had given very good testimony the day before. The witness said she did not know the juror personally. She also reported that the juror's comment was made as the rest of the jurors were entering the courtroom, but that she did not recall whether any of the other jurors made any comments in response.

The Commonwealth immediately disclosed the incident to appellant and asked the trial court to bring the jurors into the courtroom briefly and then ask the witness to identify the juror who had spoken to her. The witness identified Juror 1 and further stated that Juror 1 had made eye contact with her and smiled as the jury was entering the courtroom. At appellant's request, the trial court questioned Juror 1 outside the presence of the rest of the jury. Juror 1 immediately apologized for her conduct, stating that it was a mistake and would not happen again. The trial court reminded her that "jurors are not to engage in any conversations with any of the parties, witnesses, attorneys, or any of the spectators." Juror 1 indicated she understood and would follow the court's orders.

Arguing that the trial court should have asked Juror 1 whether she had discussed the case with other jurors or other witnesses, appellant moved for a mistrial. The Commonwealth

opposed, suggesting that the trial court instead replace Juror 1 with an alternate juror.[5] Reserving a ruling on appellant's motion, the trial court brought the full jury back into the courtroom and reiterated the general admonition "to not engage in any conversations" with any of the persons involved in the trial. The trial court then inquired whether any other jurors heard the comment that Juror 1 made to the witness. No juror responded affirmatively.

Appellant renewed his motion for a mistrial, arguing that continuing with the current set of jurors would affect his right to a fair and impartial trial because the fact that no jurors "stood up and said that they heard or did not hear it is a question of their veracity." The Commonwealth argued that nothing suggested the jury was not being truthful when answering the court's question, especially when Juror 1's brief statement was made only in passing to the witness. The trial court ultimately denied appellant's motion for a mistrial, finding that "the remark made by [Juror 1] was one that did not impede appellant's right to a fair trial" and "there's no prejudice that would accrue to appellant based on that remark that would require a new trial."

The trial court also adopted the Commonwealth's suggestion of switching Juror 1 with one of the two alternate jurors. Thus, at the conclusion of the trial, Juror 1 was dismissed from service alongside the other designated alternate juror. As a result, Juror 1 was not privy to the jury's deliberations or its final verdict.

### Testimony of Appellant's Brother

During the defense's case-in-chief, appellant presented the testimony of his older brother, Ivan Sutton. On direct examination, Ivan testified that he saw appellant shortly after 10:00 p.m. on January 1, 2022, the day of the shooting. While at a friend's house that night, Ivan and appellant each drank approximately three shots of tequila. After an hour, Ivan dropped appellant

---

[5] Jurors 4 and 7 were assigned as alternate jurors.

off at their mother's house.  Ivan testified that he then saw appellant leave with the decedent and that it looked like they were in a good and playful mood.

The Commonwealth requested a discussion outside the jury's presence regarding the expected line of continued questioning for Ivan.  It believed that appellant's next step was to play a portion of Officer West's BWC footage showing appellant's behavior after his arrest.  The Commonwealth contended that appellant would likely ask Ivan to testify whether appellant's behavior in the video indicated that appellant was intoxicated, even though Ivan had not personally observed appellant at the time of his arrest.  Although it did not object to admission of the video recording, the Commonwealth did object to any testimony from Ivan that would be an interpretation of appellant's behavior as seen only in the recording.

The trial court granted the Commonwealth's request to limit Ivan's testimony.  It directed appellant not to elicit testimony about Ivan's interpretation of appellant's behavior and physical state in the recording.  The trial court allowed, however, appellant to admit the video into evidence as appellant's Exhibit Number 1 and ask Ivan to identify appellant in the video.[6]

Appellant's Motions to Strike

After the Commonwealth rested its case, appellant moved to strike the first-degree murder charge on the basis that the evidence was insufficient to prove premeditation.  Citing to the factors considered by the Court in *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982), the Commonwealth asserted it had provided sufficient evidence of premeditation to establish a prima facie case of first-degree murder against appellant.[7]  The trial court denied appellant's motion,

---

[6] As permitted by the trial court, appellant admitted the BWC recording into evidence and Ivan identified appellant in the video during trial.

[7] *Epperly* addresses the following factors: "the brutality of the attack; whether there was more than one blow that was struck[;] . . . the disparity of the size and strength between the defendant and the victim; the concealment of the victim's body; and the defendant's lack of remorse and efforts to avoid detection."  224 Va. at 232.

finding that "the totality of the circumstances, the *Epperly* factors, and the sufficiency of [the] evidence at this stage" did not warrant striking the first-degree murder charge or reducing it to second-degree murder.

The defense then presented evidence, including Ivan's testimony, in support of appellant's voluntary intoxication claim. At the conclusion of all the evidence, appellant renewed his motion to strike the first-degree murder charge or, in the alternative, to reduce it to second-degree murder. The trial court acknowledged that both parties had introduced conflicting evidence as to whether appellant "was intoxicated or if [appellant] had been drinking at all on the date of these offenses." As a result, the trial court refused to strike the first-degree murder charge as a matter of law, concluding that what level of mens rea the evidence established was a question of fact for the jury to determine. Furthermore, because appellant had presented "more than a scintilla of evidence" supporting his voluntary intoxication defense, the trial court determined that appellant was entitled to a jury instruction on second-degree murder *in addition to* the instruction for the first-degree murder charge.

### Verdict and Sentencing

Pursuant to its ruling on appellant's renewed motion to strike, the trial court instructed the jury on both first-degree and second-degree murder, in addition to the other remaining charges. The jury convicted appellant of first-degree murder, aggravated malicious wounding, abduction, and three counts of use of a firearm - subsequent offense. By final order entered on December 1, 2022, the trial court sentenced appellant to life imprisonment, plus fifty years' incarceration with twenty years suspended. This appeal followed.

### ANALYSIS

Appellant raises several challenges to the trial court's rulings below, which this Court addresses chronologically from jury selection through conviction. First, appellant claims the trial

court erred in (i) restricting his voir dire questions, (ii) refusing to strike either Juror 10 or 11 for cause, and (iii) refusing to either dismiss Juror 1 or grant his motion for a mistrial.[8] Next, appellant argues the trial court erred in limiting the testimony of Ivan's observation of appellant on Officer West's BWC recording. Lastly, appellant asserts the trial court erred in refusing to strike the first-degree murder charge as a matter of law where the evidence was insufficient to prove premeditation. Finding no error, this Court affirms the trial court's judgment.

## I. Restriction of Voir Dire Questions

Appellant alleges that the trial court "erred by refusing to allow the defense to *voir dire* the jury regarding any negative opinion about intoxication or drinking heavily." He argues that, by "softening" the language used in Questions 4 and 9, the trial court prevented him from ascertaining the prospective jurors' potential biases towards individuals who drink heavily or are intoxicated. This Court disagrees.

It is well-established that "[a] defendant has 'no absolute right to have the court ask every question he propounded.'" *Thomas v. Commonwealth*, 279 Va. 131, 162 (2010) (quoting *Bassett v. Commonwealth*, 222 Va. 844, 853 (1981)). Rather, a trial court need only "afford a party a 'full and fair' opportunity to ascertain whether prospective jurors 'stand indifferent in the cause.'" *Id.* at 162-63 (quoting *LeVasseur v. Commonwealth*, 225 Va. 564, 581 (1983)). "However, it is within the trial court's sound discretion to decide when a defendant has had such an opportunity." *Buchanan v. Commonwealth*, 238 Va. 389, 401 (1989) (quoting *LeVasseur*, 225 Va. at 581). Accordingly, this Court reviews "a trial court's decision to exclude voir dire questions for an abuse of discretion." *Thomas*, 279 Va. at 162.

---

[8] During oral argument before this Court, appellant focused primarily on the alleged errors concerning the voir dire questions and Juror 1's misconduct.

A trial court abuses this discretion if its decision "amounts to a denial of due process or otherwise impinges upon the right to a fair and impartial jury . . . ." *Turner v. Commonwealth*, 221 Va. 513, 523 (1980). But where the trial court affords counsel "ample opportunity . . . to ask relevant questions and where the questions actually propounded . . . were sufficient to preserve a defendant's right to a trial by a fair and impartial jury, [this Court] will generally not reverse a trial court's decision to limit or disallow certain questions from defense counsel." *Thomas*, 279 Va. at 163 (quoting *Buchanan*, 238 Va. at 401). Moreover, "[t]he objecting party bears the burden of demonstrating that the trial court abused its discretion in limiting the scope of *voir dire* and must show that the jury panel lacked impartiality or that the jury selection process the court employed was prejudicial." *Skipper v. Commonwealth*, 23 Va. App. 420, 427-28 (1996).

This Court must first consider the relevancy of the proposed questions. Under Code § 8.01-358, both the trial court and "counsel for either party shall have the right to examine under oath any person who is called as a juror therein and shall have the right to ask such person or juror directly any *relevant* question . . . ." (Emphasis added). "To be permissible, counsel's questions must be relevant in that they are such as would necessarily disclose or clearly lead to the disclosure of relationship, interest, opinion, or prejudice." *Thomas*, 279 Va. at 163 (quoting *Buchanan*, 238 Va. at 401).

Mere limitation or exclusion of certain voir dire questions is not automatic evidence of the trial court's abuse of discretion; rather, counsel must prove that such limitation or exclusion violated appellant's right to a fair and impartial jury. *See LeVasseur*, 225 Va. at 582-85 (holding that the trial court did not err in prohibiting appellant from rehabilitating a prospective juror on the juror's prejudice against the death penalty when it was clear that the juror was "irrevocably committed to vote against the imposition of the death penalty"). *But see Aldridge v. United States*, 283 U.S. 308, 313-14 (1931) (ruling that the trial court erred in refusing appellant's voir

dire questions concerning prospective jurors' potential racial prejudice).  Here, the trial court's decision to reword the proposed language in voir dire Questions 4 and 9 does not automatically evidence an abuse of discretion.  Nor does this Court find anything in the record suggesting that the trial court's chosen alteration of Questions 4 and 9 denied appellant an impartial jury.  *See Ham v. South Carolina*, 409 U.S. 524, 528 (1973) ("The trial judge's refusal to inquire as to particular bias against beards, [as appellant suggested,] after his inquiries as to bias in general, does not reach the level of a constitutional violation.").

Appellant further argues that the trial court's decision to reword Questions 4 and 9—by removing the phrase "was heavily intoxicated" and replacing "drink heavily," respectively, with "use alcohol" and "consumed alcohol"—rendered those questions "ambiguous" and thus impermissible.  He claims this situation is analogous to *LeVasseur*, 225 Va. at 578-82, in which a defendant charged with first-degree murder raised a defense of voluntary intoxication from the use of illegal drugs.  In that case, defense counsel sought to elicit prospective jurors' potential bias towards the consumption of illegal drugs.  The trial court ruled that defendant's reference to "illegal drugs" in his voir dire question was "so ambiguous as to render the [jurors' answers] meaningless" because the court expected that most, if not all, law-abiding citizens would be opposed to the use of illegal drugs.  *Id.*  That reasoning does not support a similar outcome here, where appellant's defense is purely based on the legal consumption of alcohol as opposed to the use of illegal drugs.

Furthermore, even if this Court agreed that the phrases "was heavily intoxicated" and "drink heavily" are more perfectly suited to exhaustively elicit prospective jurors' bias, the Constitution guarantees a fair and impartial jury, not a perfect one.  *Commonwealth v. White*, 293 Va. 411, 420 (2017) ("the Constitution entitles a criminal defendant to a fair trial, not a perfect one" (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)).  The trial court's refusal to heed

appellant's preferred word choices in favor of more neutral but similarly worded phrases cannot be said to have denied appellant a full and fair opportunity to question prospective jurors' bias. Additionally, appellant opposed the reworded questions without explaining why the revised wording would not have sufficiently exposed the biases he sought to reveal.

Finally, the trial court's subsequent decision to instruct the jury on "intoxication" was based on the evidence appellant himself presented in support of his voluntary intoxication defense; it has no logical bearing on the court's prior decisions during voir dire before any evidence was presented. Moreover, the wording the trial court selected for Questions 4 and 9—that the evidence *may* support a finding that appellant had been drinking alcohol prior to the shooting—left the door open for appellant to present evidence of his alcohol consumption and possible intoxication without providing the jury a false preview of the evidence. For all these reasons, this Court finds that the trial court did not abuse its discretion in preventing appellant from asking the prospective jurors his proposed version of voir dire Questions 4 and 9.

II. Refusal to Strike Jurors For Cause

Appellant next maintains that the trial court erred in denying his motion to strike either Juror 10 or Juror 11 for cause based on their admitted cohabitating romantic relationship. Specifically, he asserts that the cohabitation of two or more jurors should constitute a per se ground for disqualification. This Court rejects that argument.

Juror qualification is a matter of discretion, and a trial court's refusal to strike a juror will be reviewed for an abuse of discretion only. *Green v. Commonwealth*, 262 Va. 105, 116 (2001). Thus, "the circuit court's refusal to strike a juror for cause will not be disturbed on appeal unless that decision constitutes manifest error. *Id.* This deferential standard stems from the circuit court's unique opportunity to directly observe and interact with the prospective jurors. *Id.* at 115. And although Virginia courts have not specifically considered whether juror cohabitation

constitutes a per se ground for disqualification, per se disqualification grounds are generally disfavored in Virginia. *Ramos v. Commonwealth*, 71 Va. App. 150, 159 (2019).

For example, Virginia courts have never instituted a per se rule disqualifying prospective jurors who have close personal relationships to one another. In notable contrast, the Supreme Court has recognized that "when a juror is related by blood or marriage to either a party of record or a victim in a criminal prosecution, the potential for prejudice is inherent and the law conclusively presumed partiality." *Gray v. Commonwealth*, 226 Va. 591, 594 (1984). Under those circumstances, disqualification is mandatory; "no discretion is left to the court." *Id.* at 593; *see also Salina v. Commonwealth*, 217 Va. 92, 93 (1976) (holding that veniremen owning stock in a bank, which was the victim of a crime, are disqualified from jury service). The same cannot be said of a juror whose personal relationship with another juror, as opposed to an individual involved in the case, does not inherently establish the existence of disqualifying prejudice or the potential for such.

Similarly, the so-called "public confidence" exception recognized by the Supreme Court permits juror disqualification as a matter of law only when a party demonstrates that failure to excuse the prospective juror would violate the "public confidence in the integrity of the judicial system." *Townsend v. Commonwealth*, 270 Va. 325, 329-32 (2005). This exception automatically disqualifies jurors whose "status . . . in relation to *counsel or the parties* in each case[] would so likely erode the citizenry's confidence in the fairness of the judicial system." *Id.* at 331 (emphasis added). Because disqualification on this basis presumes a prospective juror's implicit bias even when they have not demonstrated any actual bias, counsel must raise a "public confidence" objection at trial in order to preserve that challenge for appellate review. *See id.* at 332 (holding that appellant only raised "actual bias" as a ground to disqualify two jurors, thereby waiving the opportunity to raise the "public confidence" exception on appeal); *see also* Rule

5A:18.  Appellant did not do so in this case; instead, appellant argues on appeal that the cohabitation of Jurors 10 and 11 rendered them implicitly biased and therefore subject to disqualification as a matter of law.

Where bias is argued as a ground for a juror's disqualification, the question becomes whether evidence of actual bias is evident in the record through the parties' questions and the juror's answers, demeanor, or behavior.  *See Green*, 262 Va. at 116-18 (holding that "the circuit court should have removed a venireman who equivocated when asked if he had formed a fixed opinion about the accused's guilt").  Nothing in the record here evidences any actual bias of Jurors 10 or 11, nor does appellant raise such claim on appeal.

This Court refuses to take the unprecedented step of declaring cohabitation a per se ground for the disqualification of prospective jurors.  That the cohabitation of two jurors may present the *possibility* of bias or prejudice does not justify creation of the new per se rule appellant seeks.  The mere fact that two people live together, whether in a platonic or romantic relationship, does not inherently compromise their ability to follow the trial court's instructions, refrain from discussing the case at home, or exercise their independent judgment during deliberations.  Therefore, whether the trial court abused its discretion in denying appellant's motion to strike either Jurors 10 or 11 for cause depends on whether it is evident from the record that either juror's presence would result in actual or implicit bias, thus justifying their disqualification.[9]  *See Green*, 262 Va. at 117 (ruling that "the circuit court should have removed a venireman who equivocated when asked if he had formed a fixed opinion about the accused's guilt").  A party's unsupported subjective belief is not a legitimate basis for requiring juror disqualification for cause.

---

[9] Because implicit bias cannot be presumed by mere cohabitation, appellant bore the burden of establishing actual or implicit bias through other evidence.

- 14 -

Nothing in this record demonstrates any disqualifying bias of Jurors 10 or 11 based on their answers in response to the parties' questions.[10]  Furthermore, and perhaps most importantly, appellant never asked either juror whether their cohabitation would influence their opinions or affect their decisions in the case.  This Court cannot conclude that appellant met his burden of proving actual bias where he failed to question the jurors about their ability to remain impartial or exercise their own judgment free of influence from one another.  Because the record provides no independent evidence of such bias, the trial court did not err in denying appellant's motion to strike either juror for cause.

III.  Refusal to Declare a Mistrial for Juror Misconduct

Appellant further claims the trial court erred in denying his motion for a mistrial after refusing to dismiss Juror 1 from service despite her misconduct during trial.

The trial court has broad discretion in deciding whether to grant or deny a motion for mistrial based upon a juror's misconduct.  *See Galumbeck v. Lopez*, 283 Va. 500, 506 (2012).  Because "an empaneled juror is presumed impartial[,]" "a mistrial will not be declared automatically upon a showing of juror misconduct[;] . . . [instead] the trial judge, in the exercise of a sound discretion, must determine whether remarks made about the case by a juror to persons not jurors demonstrate that prejudice might result."  *Id.* (quoting *Haddad v. Commonwealth*, 229 Va. 325, 330 (1985)).[11]  As such, the party moving for a mistrial on the ground of juror misconduct bears the burden of proving that the misconduct "probably resulted in prejudice."

---

[10] And this Court "give[s] deference to the circuit court's determination whether to exclude a prospective juror because that court was [in a superior position to be] able to see and hear each member of the venire respond to questions posed."  *Green*, 262 Va. at 115.

[11] In reviewing whether a trial court has abused its discretion by failing to dismiss a juror for misconduct, this Court essentially applies "the same standard of review appropriate to appellate consideration of the trial court's decision to seat a venireperson."  *Brooks v. Commonwealth*, 41 Va. App. 454, 459 (2003) (quoting *David v. Commonwealth*, 26 Va. App. 77, 80 (1997)).

*Riner v. Commonwealth*, 268 Va. 296, 317 (2004) (quoting *Robertson v. Metropolitan Washington Airport Auth.*, 249 Va. 72, 76 (1995)).[12]

While the party moving for a mistrial on the ground of juror misconduct generally bears the burden of proof that the misconduct "probably resulted" in prejudice, the Supreme Court of the United States has recognized a different standard "for evaluating a claim of extraneous jury contact[.]" *Lenz v. Warden of the Sussex I State Prison*, 267 Va. 318, 328 (2004) (citing *Remmer v. Commonwealth*, 347 U.S. 227, 229 (1954)). In *Remmer v. Commonwealth*, the United States Supreme Court established that "any private communication, contact or tampering, directly or indirectly, *with a juror* during a [criminal] trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial" and that the burden of overcoming such presumption rests with "the Government to establish . . . that such contact *with the juror* was harmless to the defendant." *Remmer*, 347 U.S. at 229 (emphases added). In *Lenz*, the Supreme Court of Virginia recognized that both elements—"that an extraneous contact with or by a member of the jury took place and that such contact was 'about the matter pending before the jury'"—must be established before a party can invoke the *Remmer* presumption, only after which "the burden shifts to the government to establish that the potentially prejudicial contact was harmless." 267 Va. at 329 (quoting *Remmer*, 347 U.S. at 229). Otherwise, a trial court's denial of a motion for mistrial will not be reversed on appeal unless the moving party establishes a "probability of prejudice." *Galumbeck*, 283 Va. at 506; *see also Brooks v. Commonwealth*, 41 Va. App. 454, 461 (2003).

Firstly, the *Remmer* presumption is inapplicable to appellant's case and therefore, appellant's reliance on *Remmer* is misplaced. The *Remmer* presumption applies only to

---

[12] "This view is based upon the universal rule that fraud will not be presumed and upon the reluctance to presume prejudicial misconduct." *Galumbeck*, 283 Va. at 506 (quoting *Haddad*, 229 Va. at 330).

situations in which a juror is improperly contacted by either another juror or a source not on the jury. In contrast, Juror 1 briefly engaged with a witness for the Commonwealth, not another juror, and thus her conduct is beyond the scope of the *Remmer* exception.[13] And although Juror 1's comment could arguably have resulted in an indirect contact with other jurors passing by, none of those other jurors responded in the affirmative when asked by the trial court whether any of them heard Juror 1's comment to the witness. *See Riner*, 268 Va. at 317-18 ("[W]e have generally limited findings of prejudicial juror misconduct to events that occurred outside the jury room *and* that interjected information about the case that was not admitted into evidence." (emphasis added)); *Lenz*, 267 Va. at 330-31 (finding that petitioner had "not made the threshold showing entitling him to the presumption of prejudice" under *Remmer* where there was no evidence showing that the jury's "extraneous contact" with an open Bible in the jury room involved "the pending sentencing decision such that the integrity of the jury's verdict was reasonably drawn into question").

Furthermore, the record lacks evidence showing that Juror 1's misconduct probably resulted in prejudice to appellant. *See Riner*, 268 Va. at 317 ("The mere fact of juror misconduct does not automatically entitle either litigant to a mistrial." (quoting *Robertson*, 249 Va. at 76)). Here, as in *Riner*, "the trial court properly investigated the misconduct when it was brought to [the court's] attention." *Id.* The trial court conducted individual voir dire with Juror 1 and reiterated its prior admonition against engaging in any improper communication about the case.

Based on Juror 1's responses and demeanor, the trial court determined that she expressed genuine remorse for her actions and the court credited her promise to refrain from any further misconduct. *See Galumbeck*, 283 Va. at 506 (acknowledging the trial court's discretion to assess

---

[13] To the extent that *Remmer* could apply to the situation here, appellant did not preserve this argument for appellate review because he argued only actual bias under the "probability of prejudice" standard in the trial court rather than the *Remmer* presumption.

the credibility of a juror's explanation regarding misconduct). Consequently, because it found no evidence of prejudice against appellant at that point, the trial court reserved ruling on appellant's motion for a mistrial until after questioning the jury as a whole. *See Riner*, 268 Va. at 317 ("The trial court, in the exercise of its discretion, makes that determination [of prejudice].").  The trial court then reminded all jurors, including Juror 1, of the general admonition prohibiting their contact and communication with anyone about the case. Furthermore, the trial court inquired into whether any of the other jurors had heard Juror 1's comment to the Commonwealth's witness, asking only for affirmative responses. None of the jurors responded, thereby indicating that they had not overheard Juror 1's passing comment to the witness that morning. Because nothing in the record demonstrates any prejudice by any specific juror, or of the jury as a whole, this Court defers to the trial court's assessment of the jury's impartiality. Having offered no proof to the contrary, appellant has thus failed to meet his burden of showing that he was prejudiced by Juror 1's misconduct. Accordingly, this Court finds that the trial court did not abuse its discretion in denying appellant's motion for a mistrial and making Juror 1 an alternate juror.

    IV. <u>Limitation of Witness Testimony</u>

Appellant next challenges the trial court's ruling restricting the scope of Ivan's testimony regarding his opinion of appellant's intoxicated state as depicted in Officer West's BWC footage. An appellate court reviews a trial court's decision to admit or exclude evidence under an "abuse of discretion standard." *John Crane, Inc. v. Jones*, 274 Va. 581, 590 (2007). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009). Virginia Rule of Evidence 2:701 provides that "[o]pinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the

witness' perceptions." Whether such testimony meets that threshold is a determination made by the trial court. *See Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 98 (2014).

In this instance, the trial court did not abuse its discretion in limiting Ivan's testimony on the basis that his opinion of appellant's "intoxicated" behavior, as depicted in the video from Officer West's BWC, would not assist the jury in their own observation and interpretation of the same evidence. *See generally id.* (discussing Rule 2:701's "personal knowledge" requirement and when "lay opinion testimony" is necessary to assist the factfinder). Eyewitness testimony is generally helpful because it describes something the jury did not see itself. *Id.* "However, lay witness testimony that amounts only to an opinion of law is inadmissible." Va. R. Evid. 2:701.[14]

Here, appellant sought to introduce Ivan's lay witness testimony about the contents of a video recording of which he had no personal knowledge and which the jury was equally capable of viewing and interpreting by itself. Nowhere in the record does appellant allege that the video recording was too unclear, complicated, or corrupted for the jury to make an informed evaluation of appellant's behavior on its own. Nor does appellant argue that the video shows appellant engaging in specific behavior that only Ivan, as opposed to a stranger, would be able to identify as a sign of intoxication unique to appellant.

That Ivan was permitted to identify appellant in the BWC video does not justify additional testimony in the form of his opinion about appellant's mental state. The jury was capable of determining any such issue based on their own observation. The trial court permitted Ivan to testify only to his personal observations and perceptions of appellant on the evening of the shooting, which were based on his direct interaction with appellant hours before the shooting

---

[14] In *Harmon*, the Court cited to and quoted *Denis v. Commonwealth*, 144 Va. 559, 574 (1926), for the rule that "a conclusion of fact of a nonexpert witness" is not admissible where it is "clear that the jurors would or could have been fully and as exactly furnished with the data which formed the basis for the conclusion of the witness as the latter was[.]" 288 Va. at 99.

and before appellant's subsequent arrest was recorded on Officer West's BWC. Accordingly, this Court finds that the trial court did not err in limiting the scope of Ivan's testimony in accordance with Rule 2:701.

V. Evidence of Mens Rea Sufficient to Overcome Motions to Strike

Lastly, appellant asserts the trial court erred in refusing to strike the first-degree murder charge or at least reduce that charge to second-degree murder. That argument is premised on appellant's claim that the evidence presented at trial did not sufficiently prove premeditation, a necessary element of first-degree murder.

In ruling on a defendant's motion to strike, the trial court "should grant the motion only when it is conclusively apparent that [the Commonwealth] has proven no cause of action against defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the [Commonwealth] as being without evidence to support it." *Avent v. Commonwealth*, 279 Va. 175, 198-99 (2010) (alterations in original) (quoting *Banks v. Mario Indus.*, 274 Va. 438, 455 (2007)). When reviewing a trial court's decision concerning the sufficiency of evidence, "the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted

to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In this case, appellant challenges only the sufficiency of the evidence to prove premeditation, viewed first at the end of the Commonwealth's case-in-chief and then reviewed in combination with appellant's evidence of voluntary intoxication at the end of the trial. Addressing those arguments in turn, this Court first finds that the record supports the trial court's determination that the Commonwealth established a prima facie case of first-degree murder during its case-in-chief.[15] Notably, the evidence of appellant's aggressive and threatening behavior leading up to the shooting—including his brandishing of a firearm during the abduction of the decedent's daughter—supports a finding of premeditation. Accordingly, this Court affirms the trial court's denial of appellant's first motion to strike.

This Court also affirms the trial court's denial of appellant's renewed motion to strike at the conclusion of the trial. Although appellant had presented evidence in support of his voluntary intoxication defense by that point, neither Ivan's testimony nor the footage from Officer West's BWC conclusively negated the Commonwealth's evidence. *See Avent*, 279 Va. at 191 (affirming the trial court's denial of defendant's motion to strike the first-degree murder charge where the evidence of "voluntary intoxication was not sufficient 'to render him incapable of premeditation'"); *Wright v. Commonwealth*, 234 Va. 627, 629 (1988) ("Mere intoxication will not negate premeditation.").[16] Thus, based on the totality of the evidence presented by both

---

[15] Because the Commonwealth's evidence established premeditation and no evidence of alcohol consumption or mitigating factors had been presented at that point, the trial court did not err in denying appellant's request to reduce the murder charge from first degree to second degree.

[16] In denying Avent's renewed motion to strike the first-degree murder charge, the trial court "noted that 'the facts taken in the light most favorable to the Commonwealth have not

parties, the trial court did not err in sending the case to the jury for resolution on the factual question of appellant's mens rea at the time of the shooting.

Indeed, the fact that appellant's evidence warranted giving the jury an instruction on second-degree murder demonstrates that a genuine and material question of fact concerning appellant's mental state existed for the jury to resolve.[17]  As such, it would have been error for the trial court to strike the first-degree murder charge as a matter of law.  Accordingly, this Court finds that the trial court did not err in denying appellant's motions to strike because the evidence concerning his mental state was sufficient to reach the jury for determination of the appropriate level of culpability.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*

---

changed significantly' from the time of Avent's previous motion to strike the charges of first- and second-degree murder, therefore 'they are still proper charges for the trier of fact to consider.'" *Avent*, 279 Va. at 191-92.

[17] In determining the weight and credibility of the evidence, the jury found that appellant committed first-degree murder, thereby inherently rejecting his defense of voluntary intoxication and concluding that the evidence sufficiently established premeditation. *See e.g.*, *Perkins*, 295 Va. at 328; *Tizon v. Commonwealth*, 60 Va. App. 1, 12-13 (2012).