COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia


GENE ANTHONY BROWN

                                                           OPINION BY
v.       Record No. 0269-13-3                   JUDGE GLEN A. HUFF
                                                           NOVEMBER 4, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Jonathan M. Apgar, Judge

Paul G. Beers (Glenn, Feldmann, Darby & Goodlatte, on briefs),
for appellant.

Susan Mozley Harris, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Gene Anthony Brown ("appellant") appeals his convictions of first-degree murder, in

violation of Code § 18.2-32, use of a firearm in the commission of first-degree murder, in

violation of Code § 18.2-53.1, and possession of a firearm by a convicted felon, in violation of

Code § 18.2-308.2.  Following a jury trial in the Circuit Court of the City of Roanoke ("trial

court"), appellant was sentenced to a total of forty three years' incarceration in the Department of

Corrections.  On appeal, appellant first argues that "[t]he trial court erred by wrongfully

removing juror [M.B.] from the jury without cause."  Next, appellant argues "[t]he trial court

erred by denying [appellant's] alternate motion for [a] mistrial on account of the wrongful

removal of juror [M.B.]"  For the following reasons, this Court affirms the trial court's rulings.

I.  BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

In the August 2011 term, a grand jury empaneled by the trial court indicted appellant for first-degree murder, in violation of Code § 18.2-32, use of a firearm in the commission of first-degree murder, in violation of Code § 18.2-53.1, and possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2.  A three-day trial ensued, and appellant was convicted of all three charges.[1]  At the outset of appellant's trial, the trial court began the jury selection process with a pool of twenty-three prospective jurors.  At the conclusion of *voir dire*, each side exercised five peremptory strikes, leaving a thirteen-member jury – twelve regular jurors and one alternate, who was to be selected at random.  Without objection, the thirteen jurors were seated, and M.S. was randomly chosen as the alternate.

Following lunch on the first day of appellant's trial, one of the regular jurors, M.B., informed the trial court that a young woman, whose name she did not know, "recognized" her as she exited the elevator in the courthouse.  The woman informed M.B. that her grandparents live "down the street" from M.B.'s house.  M.B. told the trial court that she had not noticed the woman at the outset of the proceedings, but later realized that the woman "was with . . . [appellant's] party."  Additionally, M.B. informed the trial court that she is "a single parent" and that she "[doesn't] want to have any problems."  When the trial court asked if M.B. thought the woman was threatening her, M.B. responded, "No, no, no, . . . but it just worries me that someone knows where I live."  The trial judge returned M.B. to the jury, and appellant's trial proceeded.

---

[1] Appellant waived trial by jury on the possession of a firearm by a convicted felon charge.  Consequently, a bench trial on that charge was consolidated with a jury trial on the first-degree murder and use of a firearm in the commission of first-degree murder charges.

On the second day of appellant's trial, the Commonwealth moved for the trial court to excuse M.B. for cause and replace her with M.S., the alternate juror. Specifically, the Commonwealth was concerned that M.B. may be considering "things other than the law and the evidence." The trial court agreed that the Commonwealth's concern was "legitimate," but nevertheless took the Commonwealth's request "under advisement."

On the morning of the third day of appellant's trial, the Commonwealth renewed its motion to replace M.B. with M.S. on the ground that M.B. "may be taking into account [other concerns] other than the law and the evidence." Appellant objected to the Commonwealth's motion, arguing that M.B. had "been one of the more attentive jurors in the whole case." The trial court decided to bring M.B. back into the courtroom to further inquire about her encounter with the young woman outside of the elevator.

M.B. informed the trial court that she told the other jurors that the encounter with the woman made her "feel scared; especially, someone knowing where [she] live[s]." In response to a question by appellant's counsel, M.B. stated that the jury "express[ed] a . . . belief to [her] that it would concern them as well." She later clarified, however, that the jury meant that they would be concerned if they were in M.B.'s position, not that they were concerned for themselves. Finally, M.B. stated that she did not feel "distracted by knowing that . . . the connection was made."

The Commonwealth again asserted its desire to have M.B. replaced with M.S. Appellant opposed the Commonwealth's motion to replace M.B., but alternatively moved for a mistrial arguing that "if [M.B.] is tainted to the degree that the Commonwealth believes, I don't think that you could say that the rest of the jury is not tainted as well." The trial court subsequently ruled on both motions:

> So, what I'd like to do, probably over the objection of both
> sides . . . I'd like to keep [M.B.] on the jury for right now. But,

> then, excuse her for cause before deliberation and substitute the . . .
> alternate for her . . . .
>
> I think that from what [M.B.] said, in terms of the jury . . . not being
> individually alarmed, that we are going to have to keep going
> forward. And, I deny [appellant's] motion for a mistrial.

At the end of closing arguments, the trial court submitted the case to the jury, but waited for the bailiff to return with M.B. The trial court then informed M.B. that she was excused from the jury because "just twelve (12) [jurors] are going to hear the matter." This appeal followed.

## II. ANALYSIS

### A. Juror M.B.

On appeal, appellant first argues that the trial court erred by removing M.B. for cause. Specifically, appellant argues that when one looks at M.B.'s *voir dire* as a whole, there was no evidence to support the conclusion that M.B. could not weigh the evidence impartially and without distraction. Additionally, appellant argues that even if there was a reasonable doubt regarding M.B.'s ability to remain impartial, such doubt should have been resolved in appellant's favor.

Code § 8.01-361 provides, in pertinent part, that "[i]f a juror, after he is sworn, be unable from any cause to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place . . . ."[2] "[T]rial courts have discretion to determine the appropriate solution when jury problems arise." Waddler v. Commonwealth, 50 Va. App. 113, 117, 646 S.E.2d 896, 898 (2007) (citing Satcher v. Commonwealth, 244 Va. 220, 238, 421 S.E.2d 821, 832 (1992) ("the manner of proceeding under the circumstances [is] a matter for the exercise of the trial court's discretion")); see also Irving v. Commonwealth, 19 Va. App. 581, 584, 453

---

[2] Appellant does not challenge that M.S., the alternate who replaced M.B., was "another qualified juror" as is contemplated by Code § 8.01-361. Accordingly, this Court's analysis does not address this requirement.

S.E.2d 577, 579 (1995) ("Code § 8.01-361 allows the court in its discretion 'to cause another qualified juror to be sworn in' to replace the juror who is unable to serve . . . .").

In the present case, the trial court acted within its discretion when it replaced M.B. with the alternate juror. M.B. informed the trial court that she was scared and worried as a result of her interaction with the young woman. From this, the trial court reasonably questioned M.B.'s ability to remain impartial and whether M.B. may consider "things other than the law and evidence." Accordingly, from the record before us, this Court cannot say that the trial court abused its discretion by removing M.B. from the jury and replacing her with the alternate.[3]

Nevertheless, appellant argues that this Court should reverse the trial court's decision to remove M.B. because, "by ancient rule, any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." Green v. Commonwealth, 262 Va. 105, 117, 546 S.E.2d 446, 452 (2003). Appellant argues that if a reasonable doubt existed as to M.B.'s impartiality, the issue must be resolved in his favor – resulting in M.B. remaining on the jury. Appellant's attempt to apply this "ancient rule" to the present case, however, is misplaced.

In Wright v. Commonwealth, 73 Va. (32 Gratt.) 941, 943 (1879), the Supreme Court held that

> [A prospective juror] must be able to give [the accused] a fair and
> impartial trial. Upon this point nothing should be left to inference
> or doubt. All the tests applied by the courts, all the enquiries made
> into the state of the juror's mind, are merely to ascertain whether
> he comes to the trial free from partiality and prejudice.

---

[3] Citing to Parker v. Commonwealth, 14 Va. App. 592, 421 S.E.2d 450 (1992), appellant argues that the trial court erred by removing M.B. for cause after "final submission of the case." This argument, however, is procedurally defaulted because appellant failed to make the argument before the trial court. Accordingly, it is barred by Rule 5A:18, which "requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (quoting West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004)).

*If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion.*

(Emphasis added). The Court went on to explain that the reason for such a rule is that "it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible." Id.

Nearly one-hundred years later, the Supreme Court, citing to Wright, noted that "by ancient rule, any reasonable doubt as to a juror's qualifications *must be resolved in favor of the accused*." Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976) (emphasis added); see also Green, 262 Va. at 117, 546 S.E.2d at 452 ("by ancient rule, any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused"). Relying on Green, appellant argues that whenever there is a reasonable doubt regarding the impartiality of a juror, the accused, by "ancient rule," has the right to decide whether the juror will remain on the jury.

Contrary to appellant's argument, the "ancient rule" upon which he relies has never provided an accused with the ability to keep a juror whose impartiality can be reasonably questioned on the jury. Rather, the original justification of the rule, and its application in subsequent cases, demonstrate that its purpose is to "insure [a juror's] *exclusion*" from the jury when there is a reasonable doubt about that juror's ability "to give [the accused] a fair and impartial trial." Wright, 73 Va. (32 Gratt.) at 943 (emphasis added). Phrased differently, the "ancient rule" that "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused," Green, 262 Va. at 117, 546 S.E.2d at 452, does not give an accused the final say as to whether a potentially biased juror is removed, but rather, it requires that juror's dismissal.

This rule not only ensures that justice is "impartially administered," but also ensures that it flows "through channels as free from suspicion as possible." Wright, 73 Va. (32 Gratt.) at 943; see also Breeden, 217 Va. at 298, 227 S.E.2d at 735 (application of this ancient rule ensures an accused's constitutional right "to trial by 'an impartial jury,'" which demands that "veniremen

- 6 -

must stand indifferent in the cause" (quoting U.S. Const. amend. VI)). Indeed, contrary to appellant's argument, application of the rule to the present case would result in dismissing M.B. from the jury, not retaining her. Accordingly, appellant's argument fails.

## B. Mistrial

In his second assignment of error, appellant alleges that the trial court erred by denying appellant's motion for a mistrial. Specifically, appellant argues that he was prejudiced because M.B. was one of the more attentive jurors. Additionally, appellant argues that if M.B. was tainted by her encounter with the young woman so as to justify her removal, then the rest of the jury must have also been tainted.

Under settled principles of appellate review, "the party moving for a mistrial . . . has the burden of establishing a manifest probability of prejudice." Perez v. Commonwealth, 40 Va. App. 648, 655, 580 S.E.2d 507, 510 (2003). Thus, on appeal "the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial." Harward v. Commonwealth, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988) (citing LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), cert. denied, 464 U.S. 1063 (1984)).

In the present case, this Court finds that appellant has failed to meet his burden of demonstrating a "manifest probability" that the denial of his motion for a mistrial was prejudicial. First, appellant argues that he was prejudiced because M.B. was more attentive than the other jurors, including the alternate who replaced her. Regarding this argument, the record reveals that when discussing whether M.B. should be dismissed from the jury, appellant's counsel asserted that

> [M.B. has] been one of the more attentive jurors in the whole case.
> She's been the one who has been taking a lot of notes . . . [a]nd I
> say that – I don't remember which one was the alternate. It is one

> of the guys, I believe and . . . he has [not] been anywhere near as attentive as [M.B.] in the case.

The record reveals nothing else regarding jurors M.B.'s and M.S.'s attentiveness, or lack thereof.

In <u>Mayo v. Commonwealth</u>, 10 Va. App. 335, 337, 391 S.E.2d 888, 890 (1990), this Court noted that it would not be able to determine whether a juror was actually asleep even though the record revealed that the trial court *sua sponte* admonished the jury to keep their eyes open, and the Commonwealth's Attorney later jokingly referred to a man on the jury as the "sleeping juror." Similarly, in the present case, the record reveals one assertion by appellant's counsel that M.B. was more attentive than the alternate juror. Without more, this Court cannot conclude that M.B. was indeed more attentive than the alternate, let alone that it is manifestly probable that appellant was prejudiced by the trial court's decision to replace M.B. with the alternate. Moreover, just because a juror appears to be taking copious notes does not necessarily mean that the juror is attentive. <u>See id.</u> (noting that just because a juror's eyes are closed "does not mean that the juror was inattentive").

Next, appellant asserts he was prejudiced because the other jurors "easily could have inferred" from M.B.'s removal that the trial judge believed that M.B. needed to be protected from retribution by appellant. While the record establishes that the other jurors knew of M.B.'s encounter with the young woman, it provides no support for appellant's assertion that they were also tainted. Rather, M.B. specifically told the trial court that the other jurors were only "concern[ed]" for M.B., not that they were concerned individually.

Without a showing that the other jurors were also tainted by M.B.'s encounter with the woman, appellant is left only with his speculative assertions that the rest of the jury could have been adversely affected. Such assertions are insufficient to demonstrate a manifest probability that appellant has been prejudiced.

Therefore, this Court finds appellant has failed to meet his burden of demonstrating a "manifest probability" that he was prejudiced by the trial court's denial of a motion for a mistrial.

## III. CONCLUSION

For the foregoing reasons, this Court holds that the trial court did not abuse its discretion by removing M.B. from the jury and replacing her with the alternate. Additionally, this Court holds the trial court did not err by denying appellant's motion for a mistrial.

<u>Affirmed.</u>