COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia


LOUDOUN MEDICAL GROUP, P.C.

MEMORANDUM OPINION* BY
v.      Record No. 0051-24-4      JUDGE MARY GRACE O'BRIEN
APRIL 15, 2025

MICHAEL S. BARNES


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Elaine D. McCafferty (Elizabeth Guilbert Perrow; Daniel T. Sarrell;
Woods Rogers Vandeventer Black PLC, on briefs), for appellant.

Benjamin M. Wengerd (Travis W. Markley; Richard L. Nagle;
TrialHawk Litigation Group, LLC, on brief), for appellee.


Loudoun Medical Group, P.C., (LMG) appeals a jury verdict for Michael Barnes in a

medical malpractice suit.  LMG argues that the circuit court erred in denying its motion for a

mistrial or continuance after its lead counsel suffered a heart attack.  LMG further contends that the

court erred in allowing Barnes's causation expert to give standard-of-care testimony and in

excluding evidence about Barnes's liver transplant medication.

BACKGROUND

On appeal of a court's decision to sustain a jury verdict, we review the evidence "in the light

most favorable to the plaintiff." *Boyd v. Weisberg*, 75 Va. App. 725, 736 (2022) (quoting *Ferguson*

*Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 548 (2019)).

In 1999, Barnes received a liver transplant due to an autoimmune disease.  In February

2020, he sought treatment for knee pain, for which physician assistant (PA) Reena Patel, an

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

UNPUBLISHED

employee of LMG, prescribed diclofenac,[1] a nonsteroidal anti-inflammatory (NSAID).  Barnes

subsequently became jaundiced and fatigued, but Patel did not monitor his liver functions.  Barnes

experienced liver failure in April 2020, which required hospitalization and placement on a liver

transplant list.

Barnes brought a medical malpractice action against LMG, alleging that Patel breached the

standard of care by prescribing diclofenac.[2]  LMG filed an answer and a demurrer, which was

overruled.  LMG later moved to amend its answer to raise contributory negligence as an affirmative

defense.  The court did not rule on the motion to amend before trial.

### A.  Trial

At trial, LMG was represented by two attorneys from the same law firm—Coreen Silverman

and Kelvin Newsome.  Newsome delivered LMG's opening statement, outlining in detail the

evidence and witnesses that LMG planned to present.

Barnes began his case by playing Patel's video deposition for the jury.  In it, Patel testified

she was aware of Barnes's prior liver transplant, but it did not affect her decision to prescribe

diclofenac because she was not aware of any "contraindication to prescribing an NSAID" or any

"special risk factors associated with hepatotoxicity for diclofenac."  Patel also stated that she had

reviewed the FDA label before writing the prescription.  She acknowledged that she did not monitor

Barnes's liver functions during follow-up appointments.

Barnes's wife testified that her husband had fully recovered after his liver transplant in 1999.

She also stated that Barnes takes tacrolimus, an anti-rejection medication, "as it is prescribed."

---

[1] Diclofenac is also known by the brand name Voltaren.

[2] Barnes initially sued Patel, Dr. Matthew Gavin (Patel's supervisor), and LMG, d/b/a Leesburg Orthopedics, but later nonsuited Patel and Dr. Gavin.

1. Exclusion of Evidence Disputing Tacrolimus Compliance

On the second day of trial, Barnes moved to exclude evidence concerning contributory negligence based on noncompliance with his tacrolimus prescription. He argued that LMG had effectively withdrawn this affirmative defense because it never sought a ruling on its motion to amend its answer. LMG responded that it was waiting until "there's evidence to support the contributory negligence" and asserted that the court should allow evidence of Barnes's failure to take tacrolimus. Barnes in turn contended that he lacked notice because contributory negligence was not properly pleaded. The court acknowledged that LMG had referred to contributory negligence during its opening but agreed with Barnes and "prohibit[ed] further references to fact[s] or circumstances that amount to an allegation of contributory negligence." LMG nevertheless insisted that evidence concerning Barnes's compliance with this tacrolimus prescription was relevant to causation, not contributory negligence. Finding that LMG's goal was to show contributory negligence "regardless of what you call it," the court rejected the causation argument. LMG did not proffer any evidence of Barnes's failure to take tacrolimus as prescribed.

2. Barnes's Standard-of-Care and Causation Experts

Dr. Jeffrey Meisels testified for Barnes as an expert witness on the standard of care. Dr. Meisels, who has practiced since 1987, concluded that Patel's care fell below the standard because Barnes's prior liver transplant was a complex medical issue that required familiarity with the properties of prescribed medications. He explained that if he had a liver transplant patient, he "wouldn't prescribe any NSAID for them" and "in particular, diclofenac," because it has the highest incidents of causing liver issues. He continued that merely reading the "black box warnings section[3] and the contraindication section" of the FDA prescription information fell below the

---

[3] Black box warnings are black outlines on FDA medication guides to draw attention to possible serious complications or contraindications.

standard of care. Further, the FDA's document explained diclofenac's metabolization and reported incidents of "drug-induced hepatotoxicity." Dr. Meisels testified that Patel's failure to tell Barnes of the risks and symptoms of hepatotoxicity also showed a failure to meet the standard of care.

Having reviewed Patel's deposition, Dr. Meisels concluded that Patel did not know that "diclofenac carried a risk of hepatotoxicity" and therefore prescribing it fell below the standard of care. Newsome was the LMG attorney who conducted the cross-examination of Dr. Meisels.

PA Lawrence Collins, a practitioner with 33 years' experience, testified as Barnes's second standard-of-care expert. He opined that Patel's actions fell below the standard of care because diclofenac is metabolized by the liver, increasing risk of liver injury, which "should be common knowledge for any PA" because it is part of a PA's education. Collins concluded that because Patel had been unaware of diclofenac's risks, she breached the standard of care by prescribing it.

On the third day of trial, Barnes called Dr. Halegoua-DeMarzio, a transplant hepatologist with 16 years of experience, as an expert on causation, damages, and drug-induced liver injuries. She explained the unique risks associated with diclofenac and testified that diclofenac could cause an autoimmune reaction in the liver and lead to liver failure. Then the following exchange occurred:

> Q: Even if [serious liver injury from diclofenac is] rare, is it serious enough to dissuade you from recommending diclofenac to a patient?
>
> A: Yes. In a medication that's not necessary, there -- you know, it's just a pain medicine, -- there are other pain medicine options. *You would never take this risk that potentially could honestly kill a patient. It's not worth it*.

(Emphasis added).

LMG objected, arguing this was improper standard-of-care testimony, when she was only offered as an expert on causation and damages. Barnes responded that the testimony showed why

the use of diclofenac was unsafe, and the court overruled the objection. Dr. Halegoua-DeMarzio then explained why Barnes's liver injury was the result of taking diclofenac.

During cross-examination, Silverman was the LMG attorney who asked Dr. Halegoua-DeMarzio about Barnes's lab results and their consistency with injuries other than an acute liver injury. She also cross-examined the doctor regarding her practice, the FDA warnings, and a LiverTox report on diclofenac.

### 3. Motion for Mistrial or Continuance

At the beginning of the fourth day of trial, a Thursday, LMG moved for a mistrial or continuance. After court had concluded the night before, Silverman had gone to the hospital and subsequently had to be admitted to the ICU, suffering a heart attack. Newsome argued that a mistrial was appropriate because Silverman was LMG's lead counsel and, as second chair, he was unfamiliar with some parts of LMG's case, including two witnesses. He further cited his lack of sleep after he had accompanied Silverman to the hospital. The judge informed counsel that, during a recess on the preceding day, Silverman had advised the judge that she was having chest and arm pains, "classic indications of a potential heart problem." Although the judge had offered to "suspend everything and let her get to a medical facility," Silverman chose to "soldier on, finish[] cross-examination."

Barnes opposed the mistrial motion, arguing that there was no "indelible prejudice" to LMG because Newsome had been involved in the case "for at least three months," deposed two of Barnes's expert witnesses, delivered the opening statement, sat "in the first chair seat all trial long," and cross-examined two witnesses. Although the court denied the motion, it offered a continuance. In doing so, it recognized the delay inherent in setting a new trial and stated:

> *And so I do also consider and I think it's appropriate to consider[] . . . that in evaluating prejudice it's not lost on the [c]ourt that there would be some prejudice to the plaintiff* who have [sic] already put their cards on the table and rested their case and we're in

the middle of trial and the plaintiff himself has had a very difficult
time over the last four years according to the evidence with respect to
his health and we would be making him wait for another two years
for some sense of finality.

(Emphasis added).

The court offered to continue trial until the following Monday, giving Newsome "the next couple of days and then the weekend" to prepare. But Newsome declined the offer because LMG's out-of-state witnesses were unavailable. He instead requested to continue as scheduled and to deliver closing arguments on Monday. Newsome did not ask for a longer continuance or offer any other alternatives.

### 4. LMG's Defense

Before LMG began presenting its defense, Barnes moved to exclude the testimony of LMG's first scheduled witness, Dr. Lauren Caldas, arguing that her testimony about whether Barnes took his tacrolimus as prescribed was improper contributory negligence evidence. While not agreeing to the motion, Newsome agreed that most things he had planned to ask Dr. Caldas were already in evidence or had been excluded. LMG never proffered Dr. Caldas's testimony. The court granted the motion to exclude.

LMG called Dr. Gregory Golladay, an orthopedic surgeon with 22 years of experience, who testified that Patel's action did not violate the standard of care. During cross-examination, Dr. Golladay admitted that "the standard of care require[s] a PA to know the specific risks of a medication before [prescribing] it to a patient" and that prescribing it without knowing the risks fell below the standard of care. He also acknowledged that Patel should have known the risks.

Alan Fitch, who had been practicing as a PA for 24 years, testified that Patel did not violate the standard of care. On cross-examination, Fitch acknowledged that a PA should know the risks of medications and that the FDA prescription information included a section on diclofenac's negative hepatic impacts.

- 6 -

LMG's last witness was Dr. Robert Brown, a transplant hepatologist with 34 years of experience. Dr. Brown opined that Barnes experienced a reoccurrence of his autoimmune disease. On cross-examination, Dr. Brown agreed that the timing of a liver injury was important to determine whether it is drug-induced and that the timing of Barnes's jaundice was consistent with a drug-induced injury. He admitted that he could not exclude diclofenac as a cause of Barnes's injury.

At the close of evidence, the court denied LMG's renewed motion for a mistrial. Although the court again offered a recess from Thursday afternoon until Monday, Newsome requested to make closing arguments on Friday instead.

The jury returned a $5 million verdict for Barnes, plus prejudgment interest. LMG renewed its motion for mistrial, which the court again denied. The court reduced the verdict to $2.4 million to conform with statutory requirements.

### B. Post-Trial Motion to Set Aside Verdict

LMG, represented by new counsel, moved to set aside the verdict and requested a new trial. LMG argued that new information regarding the timing of Silverman's heart attack justified revisiting the motion for mistrial and that the court applied the wrong standard by erroneously considering prejudice to the plaintiff. In support of the motion, LMG submitted affidavits by Silverman and Newsome, as well as Silverman's doctors.

Silverman attested that she had been physically unable to finish the cross-examination of Dr. Halegoua-DeMarzio and that she had planned to explore more medical literature and Barnes's failure to thrive. Both her doctors averred that they believed the heart attack had started on the second day of trial.

In Newsome's affidavit, he outlined that he had noticed that Silverman was "observably weak, uncharacteristically soft-spoken, unsteady on her feet," and had difficulty recalling details.

He claimed that a mistrial was required because he had met two of LMG's witnesses only shortly

before trial and that being at the hospital with Silverman the night she was admitted had taken an

emotional and physical toll on him.

During argument, LMG's new attorney stated that the court had been unaware that

Silverman had suffered a heart attack during the third day of trial, but the court clarified as follows:

> What actually happened was during a recess, Ms. Silverman
> approached my clerk[,] and my clerk told me that she was having
> pains that were going down her arms. So I immediately came back
> and called all the parties back into chambers and I said, look, we can
> just stop this right now and go to the hospital. That's the most
> important thing is your health. And she insisted -- I guess bravery,
> perhaps, or courage, I don't know what the right word is, but she
> bravely insisted, over the court's concern, that no, no, she wanted to
> finish cross-examination of a witness and then be done with the case,
> which then happened. . . . I just want to make that clear that we
> didn't just rush through it. We took a moment to say if you are
> having pain, let's stop right now. She said no, no, I can finish
> cross-examination.

After considering all "evidence, affidavits, arguments of counsel, as well as written

memoranda," the court denied the motion.

The court also agreed that prejudice to Barnes should not be considered and acknowledged

that "the court did, at one point, ponder out loud with respect to that." It therefore "consider[ed] the

matter anew at this time on the issue of indelible prejudice" to LMG. The court found Newsome's

and Silverman's performance had been "very competent" and had not presented any deficiencies.

The court concluded that "the evidence is insufficient to establish indelible prejudice" and denied

the motion. LMG appeals.

ANALYSIS

A. Standard of Review

We review each of LMG's assignments of error under an abuse of discretion standard. *See*

*Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (motion for mistrial); *Keesee v. Donigan*,

259 Va. 157, 161 (2000) (admission of expert testimony); *Blunt v. Commonwealth*, 62 Va. App. 1, 7-8 (2013) (admissibility of evidence).

"[T]he phrase 'abuse of discretion' means that the circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Ellis v. Commonwealth*, 68 Va. App. 706, 711 (2018) (alteration in original) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

> A court can abuse its discretion in three ways: (1) by failing to consider a relevant factor that should have been given significant weight, (2) by considering and giving significant weight to an irrelevant or improper factor, and (3) when the circuit court, while weighing "all proper factors," commits a clear error of judgment.

*Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013)).

### B. Assignment of Error 1—Motion for Mistrial

LMG argues that the court erred in denying the motions for mistrial or continuance, as well as the motion to set aside the verdict, and claims that Silverman's heart attack caused indelible prejudice to LMG. LMG contends that the court erred in considering prejudice to Barnes, that it was deprived of meaningful cross-examination, and that Newsome was unable to effectively represent LMG.

At the outset, we note that the court granted LMG's request for a continuance and offered to postpone further proceedings until the following week, but LMG rejected the offer. As a result, we will not consider the part of LMG's assignment of error regarding the court's denial of a continuance. *See* Rule 5A:20(c)(2) ("An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient."); *Barnes v.*

- 9 -

*Commonwealth*, 80 Va. App. 588, 595 (2024) (finding that an assignment of error was waived when it failed to comply with Rule 5A:20(c)(2)).

"[W]e will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial." *Wright v. Commonwealth*, 52 Va. App. 690, 707 (2008) (en banc) (quoting *Perez v. Commonwealth*, 40 Va. App. 648, 654 (2003)); *see also Gross v. Stuart*, 297 Va. 769, 774 (2019) ("[A]bsent a manifest probability of prejudice to an adverse party, a new trial is not required . . . ." (first alteration in original) (quoting *Lowe v. Cunningham*, 268 Va. 268, 272 (2004))). "Under settled principles of appellate review, 'the party moving for mistrial . . . has the burden of establishing a manifest probability of prejudice.'" *Brown v. Commonwealth*, 64 Va. App. 59, 67 (2014) (alteration in original) (quoting *Perez*, 40 Va. App. at 655). "[T]his Court is 'bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997)).

Here, the court initially considered an improper factor when it considered prejudice to Barnes. But once LMG brought this mistake to the court's attention, the court "consider[ed] the matter anew." When properly reviewing only the prejudice to the defendant, the court found that "the evidence is insufficient to establish indelible prejudice." The court also made factual findings that both Silverman's and Newsome's trial skills were "very competent" and in no way deficient. Thus, we will only reverse if those findings are plainly wrong. *See Zelnick v. Adams*, 269 Va. 117, 123 (2005).

Nothing in the record suggests that the court's findings were plain error. Newsome delivered LMG's opening statement, outlining LMG's case and evidence in detail. Silverman extensively cross-examined Dr. Halegoua-DeMarzio on Barnes's lab reports, her practice, the FDA label, and a LiverTox report. Newsome competently directed and redirected the witnesses. When

offered a continuance to the following Monday, Newsome rejected the offer. He never asked for a continuance further out than Monday or for permission to have the out-of-state witnesses testify in an alternative way. Newsome declined the court's second offer to delay closing arguments until Monday, which would have given him extra time to prepare and chose to close on Friday instead. He gave a thorough and detailed closing argument.

Further, LMG's witnesses all made concessions during cross-examination: Dr. Golladay admitted that a PA who prescribes a drug without knowing the associated risks violates the standard of care; Fitch admitted that Patel should have known the risks associated with a prescription and that the FDA insert included a section on hepatic impact; and Dr. Brown acknowledged that the timing of Barnes's symptoms could suggest a drug-induced injury. Nothing in the record shows that Silverman would have rehabilitated these witnesses any better than Newsome did.

Finally, LMG argues that, because affidavits regarding Silverman's medical condition were unopposed, the court erred in finding that Silverman competently represented LMG. Again, nothing in the record suggests that the court erred. Although Silverman attested in her post-verdict affidavit that she had to limit her cross-examination due to pain and that she would have asked Dr. Halegoua-DeMarzio more about medical literature and Barnes's failure to thrive, she did not alert the court to this. In fact, she chose to move forward with cross-examination even after the court offered to suspend or continue the case. Further, the court had the opportunity to observe Silverman during her cross-examination, and we are bound by the court's factual findings. *See Zelnick*, 269 Va. at 123. The court's determination that Silverman's representation was competent is not plainly wrong merely because LMG submitted affidavits attesting to Silverman's impairment. Thus, the court did not err in denying LMG's motion for mistrial.

## C. Assignment of Error 2—Improper Standard-of-Care Testimony

LMG contends that the court erred by permitting Dr. Halegoua-DeMarzio to "offer standard[-]of[-]care criticisms" when she was only qualified as a causation and damages expert.

"A trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified in the field in which he gives evidence." *Hinkley v. Koehler*, 269 Va. 82, 91 (2005) (quoting *Swersky v. Higgins*, 194 Va. 983, 985 (1953)). In *Hinkley*, the Supreme Court found that when an expert who was not qualified appropriately testified about the standard of care, the testimony was "presumed to be prejudicial unless it plainly appears that it could not have affected the result." *Id.* at 92 (quoting *Spence v. Miller*, 197 Va. 477, 482 (1955)).

We assume without deciding that Dr. Halegoua-DeMarzio gave improper standard-of-care testimony. *See Ali v. Commonwealth*, 75 Va. App. 16, 37 n.9 (2022) (explaining that an appellate court may assume without deciding an issue to facilitate the decision "on the best and narrowest ground"). The issue then becomes whether the testimony was harmless error. *See* Code § 8.01-678 ("When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.").

In *Hinkley*, the testimony was not harmless error because the erroneous testimony was much more detailed than the party's other standard-of-care evidence. *Hinkley*, 269 Va. at 92. Further, the Supreme Court found that "[t]he jury also could have accorded more weight to [the erroneous] testimony overall because of [the expert's] 33 years of experience in the practice of medicine." *Id.*

Here, the admission of the erroneous standard-of-care testimony was harmless error. Barnes's two standard-of-care witnesses both testified that Patel fell below the standard of care when prescribing diclofenac. Further, one of LMG's own standard-of-care experts admitted during

cross-examination that a PA who prescribed a medication without knowing the associated risks would breach the standard of care. LMG's other expert acknowledged that PAs should know the risks associated with medications they prescribe. Finally, Patel admitted during her deposition that she did not know of any "contraindication to prescribing an NSAID" or any "special risk factors associated with hepatotoxicity for diclofenac."

Unlike in *Hinkley*, Dr. Halegoua-DeMarzio had less experience than Barnes's designated standard-of-care experts—16 years' compared to Dr. Meisels's 36 years' and Collins's 33 years' experience—meaning the jury could not "have accorded more weight to [the erroneous] testimony overall because of [the expert's] . . . experience." *Hinkley*, 269 Va. at 92. Additionally, Dr. Halegoua-DeMarzio's testimony was focused on causation and not standard of care, giving a less detailed standard-of-care opinion than either Dr. Meisels or Collins gave. *Cf. id.* (finding error was not harmless when the erroneous testimony was more detailed than the other standard-of-care experts' testimonies). Thus, assuming without deciding that Dr. Halegoua-DeMarzio's statements were improper, the error was harmless.

D. Assignment of Error 3—Exclusion of Tacrolimus Compliance Evidence

LMG argues that the court erred by precluding evidence of Barnes's alleged failure to take tacrolimus as prescribed. LMG contends that this ruling violated its fundamental right to cross-examination.

"Error may not be predicated upon . . . exclusion of evidence, unless . . . the substance of the evidence was made known to the court." Va. R. Evid. 2:103. A party claiming a court improperly excluded evidence must make a proffer, showing what evidence would have been elicited, "rather than merely [the party's] theory of the case." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006). "The failure to proffer the *expected testimony* is fatal to [the party's] claim on appeal." *Id.* (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006)).

LMG relies on *Campbell v. Campbell*, 49 Va. App. 498 (2007), to claim that it was not required to make a proffer of the evidence. In *Campbell*, the court prohibited one party from cross-examining the other party's expert witness because the court had limited the amount of time each party could use for the entire trial and the party trying to cross-examine had already used its allocated time. *Id.* at 503. Acknowledging that a court "may appropriately limit cross-examination, subject to the rules of evidence," this Court held that no proffer was required because "the trial court abused its discretion by its arbitrary refusal to allow any cross-examination whatsoever." *Id.* at 504-05.

LMG's reliance on *Campbell* is misplaced. Here, the court did not prevent LMG from "any cross-examination whatsoever." *Id.* at 505. The record reflects that LMG conducted extensive cross-examination of all of Barnes's witnesses. At the time, Silverman never gave the court an indication that her cross-examination had to be cut short. *Campbell* does not apply, and therefore LMG was required to proffer the evidence it hoped to produce during trial.

But LMG failed to do so. Specifically, LMG did not proffer the substance of any evidence it would have elicited from Barnes's witnesses beyond the statement that it would have asked whether Barnes was taking his tacrolimus as prescribed. In fact, the only evidence presented on the issue is Barnes's wife's testimony that Barnes "takes [his medication] as it is prescribed." Similarly, LMG merely mentioned that one of its experts would testify that Barnes's liver injury was caused by his failure to take tacrolimus, without proffering any evidence that Barnes actually failed to take his medication as prescribed.[4]

---

[4] During argument on the question of whether Dr. Caldas's testimony should be excluded, counsel for Barnes had read parts of LMG's expert disclosure that stated: "Barnes was not compliant with his tacrolimus administration based on the dosages ordered, the number of pills dispensed, and frequency with which the patient refills the prescriptions." But LMG never proffered that this would indeed be the evidence elicited from Dr. Caldas at trial. *See Durant v. Commonwealth*, 35 Va. App. 459, 466 (2001) ("It is well settled that when evidence is excluded, the *proponent* must proffer for the record the nature of the expected evidence in order to preserve the

We thus cannot decide whether the court erred in excluding evidence regarding Barnes's alleged failure to take tacrolimus because we have no proffer of that evidence. *See Tynes*, 49 Va. App. at 21.

## CONCLUSION

The court did not abuse its discretion in denying the motion for mistrial, and any error in admitting improper standard-of-care testimony was harmless. Further, LMG failed to make a required proffer of the evidence regarding Barnes's compliance with his medication. For these reasons, we affirm the circuit court's judgment.

*Affirmed*.

---

ruling for appeal." (emphasis added)); *see also Creamer v. Commonwealth*, 64 Va. App. 185, 199 (2015) (requiring "proffer of at least a summary of the witness'[s] expected testimony, sufficient to establish its relevance, *contemporaneous* with the court's considering its ruling whether to admit or exclude it" (emphasis added)).