COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge O'Brien and Senior Judge Humphreys

MARK C. FERGUSON

v.     Record No. 0289-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JUNE 3, 2025

FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
S. Anderson Nelson, Judge

(Charles F. Felmlee; Chuck Felmlee Law, P.C., on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Mary Catherine Talbott,
Assistant Attorney General, on brief), for appellee.


Mark C. Ferguson was convicted in a bench trial of felony property destruction, in violation

of Code § 18.2-137(B). On appeal, Ferguson challenges the sufficiency of the evidence to establish

that he had the specific intent to damage the property at issue—a truck left in his possession for

repair work. After examining the briefs and record, the panel unanimously holds that oral argument

is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule

5A:27(a). We affirm the conviction.

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

UNPUBLISHED

## BACKGROUND[1]

In March 2021, Erica Garrett hired Ferguson to replace an engine in her son's 2000 Chevrolet Silverado pickup truck ("Silverado truck"), for $ 2,200.  On March 28, Ferguson picked up the Silverado truck from Garrett's residence and told her that the engine work would take two weeks.  As payment, Garrett gave Ferguson $1,100 in cash and sold him a 1987 Chevrolet truck ("1987 truck") for $1,200.  Ferguson gave Garrett a personal check for $1,200 to buy the 1987 truck; however, the parties agreed that Garrett would not cash Ferguson's check if he replaced the engine in the Silverado truck within two weeks, because "there was no point in cashing the check and then giving $1[,]100 back."  A few days later, Garrett gave Ferguson the title to the 1987 truck.

During the fourteen months between March 2021 and May 2022, Garrett communicated repeatedly with Ferguson, either by voice or by text messaging, about the status of the work on the Silverado truck.  Each time, Ferguson gave an excuse for not completing the work and asked for two more weeks.  When Ferguson "did not come through on his promise" to fix the Silverado truck, Garrett attempted to cash Ferguson's $1,200 check for the 1987 truck, but the check was "no good."  Garrett subsequently initiated a civil action to recover the Silverado truck, the 1987 truck, and her money.  She alleged that the value of the Silverado truck was $2,500 and the value of the 1987 truck was $1,200.  When Ferguson appeared in court, he promised Garrett that he would have the Silverado truck repaired and returned to her by October 1, 2022, but he again failed to keep his promise.  In response, Garrett obtained writs of possession and *fieri facias* in detinue for both trucks.

---

[1] On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Brown v. Commonwealth*, 64 Va. App. 59, 61 (2014) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2207) (en banc)).  Applying this principle, we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On October 18, 2022, Sergeant David O'Brien of the Appomattox County Sheriff's Office served Ferguson with the writs of possession, notifying him that the two trucks would be recovered from his premises on October 24, 2022. While serving the writs, Sergeant O'Brien photographed the vehicles on the premises. Ferguson told Sergeant O'Brien that the 1987 truck was his and the officer "was not going to take that." Ferguson said that he had the title to the 1987 truck but had not yet put the title in his name. He showed Sergeant O'Brien the Silverado truck in a shed. When Sergeant O'Brien photographed the Silverado truck, he saw an engine sitting on the ground in front of it. Ferguson told the officer that Garrett had purchased the engine for him to put in the truck and he had not finished the work yet.

On October 24, 2022, when Sergeant O'Brien returned to Ferguson's residence to execute the writs of possession, the two vehicles had been moved. The 1987 truck was next to the highway, and parts of the truck had been removed and left on Ferguson's property. Using tow trucks and a utility trailer, Garrett transported both trucks and their unattached parts to her residence. The trucks were not in the same condition as reflected in the photographs taken one week earlier. The bed and hood of the 1987 truck had been removed, and the hood was missing. The doors of the 1987 truck had been removed and replaced by two doors that did not match the truck. Regarding the Silverado truck, although Sergeant O'Brien "didn't observe anything" different about its condition, Garrett discovered that several parts were missing—specifically, the "top end of the motor," both catalytic converters, the front bumper's light bar, and a headlight. Also, the hood was broken, and the brake line was cut.

From Garrett's perspective, the Silverado truck "was basically destroyed." The estimated total cost of repairs for that vehicle was $8,014.30.

Ferguson was charged with felony destruction of property belonging to Garrett with a value of over $1,000, occurring between October 18 to October 24, 2022, in violation of Code

- 3 -

§ 18.2-137(B). In addition to Garrett's and Sergeant O'Brien's testimony, the evidence at trial included testimony from Garrett's mother, Teresa Franklin. Franklin testified that her husband had owned the 1987 truck before his death in December 2020 and that she had authorized Garrett to give the title to Ferguson "[a]s part of the payment for putting a motor in [her] grandson's truck."

After the Commonwealth rested, Ferguson testified on his own behalf. He admitted that he took possession of Garrett's Silverado truck in March 2021 to install a new engine and that he obtained the 1987 truck "during that same time period," when he "purchased it." Ferguson claimed that Franklin gave him the title to the 1987 truck and that he also had a bill of sale, the death certificate for Franklin's late husband, and a related power of attorney.

Ferguson offered several explanations regarding the condition of the Silverado truck. Although he acknowledged that he had not finished the engine work by October 2022, he testified that the delay was because he needed to remove the replacement engine after installing it and return it to the supplier. He admitted that he removed the truck's two catalytic converters and put them in the back of the truck but claimed that he did so because the replacement-engine supplier would not warranty its engine with these converters, and he did not install new converters because Garrett had not paid for them. He denied knowing anything about the truck's brake line and insisted that it was not cut, suggesting instead that it could have "busted" because it was "really rusted." He testified that he was not able to "finish things" because the job became more complicated than he anticipated, and he needed another $900 from Garrett to finish the work. Finally, with respect to the six-day period following Sergeant O'Brien's visit to his residence on October 18, Ferguson claimed that he performed additional work on the Silverado truck, which involved removing the hood to do the engine work and installing the new replacement engine. Ferguson testified that he installed a second replacement engine before October 24, but the intake was in the truck's cab because he had

- 4 -

not yet installed it. He also claimed that he texted Garrett, informing her about the catalytic converters and the other "bad" parts that he had taken off.

Although Ferguson still had not retitled the 1987 truck in his name as of October 2022, he claimed that he traded it to Jason Viar "[p]robably a week after [he] got it," in exchange for a "rollback" truck. At that time, he gave Viar the title, the bill of sale, and the power of attorney. When asked to explain why the 1987 truck was still on his property in October 2022, Ferguson testified that he "was restoring it for [Viar]." According to Ferguson, Viar had paid him $1,500 to restore the vehicle, so he removed the bed, the doors, and the hood "to sandblast all that stuff." When asked to explain his statement to Sergeant O'Brien that he owned the 1987 truck, Ferguson testified that he told the officer that he had bought the vehicle and then sold it.

Viar testified in Ferguson's defense, stating that Ferguson sold him the 1987 truck on May 5, 2021, in exchange for his "rollback" truck. Viar testified that Ferguson gave him the truck's title along with a death certificate and a power of attorney relating to Franklin's husband. Thereafter, Viar believed that he was the rightful owner of the 1987 truck until Garrett repossessed it. Viar explained that the 1987 truck was on Ferguson's property in October 2022 because Ferguson was repainting it for him.

In rebuttal, Garrett testified that Ferguson never told her that he had sold the 1987 truck to anyone.

During closing arguments, Ferguson conceded that Garrett owned the Silverado truck and the estimated cost of repair was over $8,000, but he argued that the Commonwealth failed to prove that he "knowingly [and] intentionally committed a crime." He argued that, at most, the Commonwealth proved that he "potentially" was "a bad mechanic."

The court found that Ferguson and Viar were not credible witnesses and Ferguson "violated the law" by "deliberately" damaging Garrett's Silverado truck. The court observed that, despite

possessing Garrett's Silverado truck for a year and a half, Ferguson did not perform the engine replacement that he had promised to accomplish in two weeks and, when Garrett used "legal means" to get the truck back, "there [was] damage to it." The court also found that Ferguson "cut off" the Silverado truck's two catalytic converters and damaged the brake line as Garrett had observed after recovering the vehicle; the court noted that there was "no evidence that the brake lines were damaged" on October 18, when Sergeant O'Brien photographed the truck during his first visit to Ferguson's residence. The court determined that Ferguson's removal of the truck bed from the 1987 truck, and his other actions with regard to that truck after receiving the writs of possession, showed his intent to damage the Silverado truck.

## ANALYSIS

### I. Standard of Review

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict" when reviewed on appeal. *Wood v. Commonwealth*, 57 Va. App. 286, 292 (2010) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)). Therefore, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). For an appellate court, "[t]he only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

In determining whether a trial court's judgment was plainly wrong or unsupported by the evidence, this Court must view "the evidence in the light most favorable to the Commonwealth, as

'the prevailing party in the trial court.'" *Cornelius v. Commonwealth*, 80 Va. App. 29, 34 n.2 (2024) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019)). "In doing so, the Court discard[s] all evidence of the accused that conflicts with that of the Commonwealth and regard[s] as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible from that evidence." *Id.* (alterations in original) (quoting *Kelley*, 69 Va. App. at 624). Further, we consider both direct and circumstantial evidence in the record. *See Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) ("Our inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" (quoting *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003))).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "However, '[w]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'" *Cantrell v. Commonwealth*, 7 Va. App. 269, 289 (1988) (alteration in original) (quoting *Bridgeman v. Commonwealth*, 3 Va. App. 523, 526-27 (1986)). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon*, 58 Va. App. at 206 (alteration in original) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "[W]hether an 'alternative hypothesis of innocence is reasonable is a question of fact . . . .'" *Kelly v. Commonwealth*, 41 Va. App. 250, 259 (2003) (en banc) (quoting *Stevens v. Commonwealth*, 38 Va. App. 528, 535 (2002)). Thus, a fact finder's "rejection of a hypothesis of innocence 'is binding on appeal unless

plainly wrong.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)).

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). "A defendant's false statements are probative to show he is trying to conceal his guilt[] and thus [are] evidence of his guilt." *Taylor v. Commonwealth*, 61 Va. App. 13, 31 (2012) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 548 (1991)).

## II.  Specific Intent to Damage Personal Property

Code § 18.2-137(B) makes it a Class 6 felony to "intentionally" destroy, deface, or damage another person's property "if the value of or damage to the property . . . is $1,000 or more." *See Scott v. Commonwealth*, 58 Va. App. 35, 50 (2011). In *Scott*, this Court explained that Code § 18.2-137(B) requires the heightened mens rea of specific intent:

> Code § 18.2-137(B) attaches criminal liability when a person performs a volitional act that damages the property of another and the person *specifically intends* to cause damage to the property by that act. . . . Code § 18.2-137(B) does not criminalize the mere performance of a volitional act conducted in a criminally negligent manner that happens to damage the property of another.

*Id.* at 49 (emphasis added). Thus, under Code § 18.2-137(B), two elements are required for a conviction: (1) "a volitional act that damages the property of another," and (2) the "specific[] inten[t] to cause damage to the property by that act." *Id.*

"Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances . . . ." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Commonwealth v. Herring*, 288 Va. 59, 75 (2014)). "The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven." *Knight v. Commonwealth*, 61 Va. App. 148, 161 (2012) (alteration in original) (quoting *Wilson v. Commonwealth*, 249 Va. 95, 101 (1995)). "Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit [the crime], the intent element is established." *Id.* (alteration in original) (quoting *Wilson*, 249 Va. at 101).

Here, the court was not plainly wrong in finding that, between October 18 and October 24, 2022, Ferguson had the specific intent to destroy, deface, or damage Garrett's Silverado truck. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the trier of fact was entitled to find that, after being served with the writs of possession on October 18, Ferguson deliberately cut the Silverado truck's brake line, "cut off" its two catalytic converters, removed the front bumper's light bar, and removed a headlight—knowing that the sheriff's office would repossess the vehicle on October 24. In his testimony, Ferguson never offered explanations for severing the brake line (but merely suggested that it had rusted) or removing the light bar and headlight. And, although Ferguson did attempt to explain his other actions, the court, as the judge of witness credibility, was entitled to reject his explanations and determine that changes in the Silverado truck's condition were purposefully deleterious and not reasonably related to the task of replacing the engine.

Similarly, although the court found that Garrett was not the legal owner of the 1987 truck, it was entitled to conclude that Ferguson also reacted to the writs of possession by intentionally removing the bed of that truck and installing mismatched doors. Thus, regardless of Ferguson's motivation to disassemble and damage both vehicles on or after October 18, the

fact finder was permitted to infer from Ferguson's knowing and purposeful acts that he intended to damage the trucks. "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Knight*, 61 Va. App. at 161 (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998)).

It is well-established that "[t]he requisite specific intent [to damage] 'may, like any other fact, be shown by circumstances.'" *Id.* at 163 (quoting *Moody*, 28 Va. App. at 706). This requisite intent must be determined from "the outward manifestation of [a person's] actions leading to usual and natural results, under the peculiar facts and circumstances disclosed." *Id.* at 163-64 (alteration in original) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994)). Given the facts and circumstances that existed on and after October 18, the court was entitled to conclude that the "outward manifestation[s]" of Ferguson's actions reflected his intent to damage—not to repair. *Id.* at 163 (quoting *Hughes*, 18 Va. App. at 519). Knowing that Garrett sought the return of both vehicles in the same condition that they were in on October 18, Ferguson acted in a manner that could reasonably be viewed as destructive, not restorative.

Ferguson asserts that "[t]here was no expert mechanic who testified at trial that [Ferguson] did anything to the vehicle that would have been out of the ordinary as far as the repairs he was doing to the vehicle." He thus argues that the record only contained proof of his intent to repair and therefore was insufficient to prove his specific intent to damage. He also relies on Sergeant O'Brien's testimony that he "didn't observe anything" different about the Silverado truck when he returned on October 24. Thus, Ferguson argues, absent proof of damage to the Silverado, the evidence was insufficient to prove his specific intent to damage it.

As the finder of fact, the court "ascertains a witness'[s] credibility, determines the weight to be given to [the] testimony, and has the discretion to accept or reject any of the witness'[s] testimony." *Street v. Street*, 25 Va. App. 380, 387 (1987) (en banc). Here, Sergeant O'Brien's

- 10 -

testimony that he saw no change in the condition of the Silverado truck on October 24 did not require the court to find that Ferguson did not damage the vehicle. Defense counsel merely asked the officer if anything "had changed as far as the condition of the 2000 vehicle" since his visit to Ferguson's residence on October 18, and he replied, "I didn't observe anything myself." As a result, Sergeant O'Brien's testimony did not exclude the possibility that he did not fully inspect the condition of the Silverado truck on October 24. Given Garrett's testimony about the removal of the catalytic converters and the severing of the brake line, the court was not required to assign much weight, if any, to Sergeant O'Brien's testimony.

The circumstantial evidence was sufficient to find that Ferguson had the specific intent to damage Garrett's Silverado truck. Accordingly, the court did not err in convicting Ferguson of the felony offense of intentionally damaging personal property, as alleged in the indictment.

CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*